GEORGE P. MARSH, Administrator *de bonis non* of OZIAS BUEL, *v.* ISAAC R. HARRINGTON.

IN CHANCERY.

Where there were four joint executors upon an estate, who gave a joint bond for faithful administration, and two of them ultimately became insolvent, and one of the remaining two was compelled, under a decree of the court of chancery, to pay for property, which, without fault or negligence on his part, had been wasted by one of the insolvent executors, prior to the time of his becoming insolvent, it was held, that the executor making such payment might recover from the other solvent executor one half of the amount so paid by him, and of all expenses incurred by him in defending the suit in chancery, in which the decision was made.

And it was held, that it made no difference, in this respect, that it was agreed between the executors, prior to the execution of the bond, that the executor, who subsequently made such payment, should have the control of the estate, and that he in fact transacted most of the business of settling the estate,—it also appearing that the other executors did participate in the management of the estate. Such contract would only make the acting executor the agent of the other executors.

Marsh, Adm'r, *v.* Harrington.

APPEAL from the court of chancery. The orator alleged in his bill, in substance, that, on the 29th day of June, 1814, one William C. Harrington, then of Burlington, made his last will and testament, and thereby bequeathed, among other legacies, one thousand dollars to the children of Phineas Lyman, and constituted the orator's intestate, Ozias Buel, and Lyman King, Phineas Lyman and the defendant his executors; that soon after the said testator deceased, and the executors accepted the trust conferred upon them, and executed a joint bond, conditioned for the faithful administration by them of the estate, and took possession of the property of the deceased, to an amount more than sufficient to pay all the debts and legacies; that on the settlement of the account of the executors in the probate court, Phineas Lyman claimed to be allowed to retain in his hands the amount of the legacy to his children, and was allowed, by said court, to retain the same out of funds in his hands belonging to the estate; that the executors fully administered upon the estate, and, about the first of January, 1823, paid over to the residuary legatees the entire balance of funds in the hands of the executors, pursuant to a decree of the probate court; that subsequently the children of Phineas Lyman, after they arrived of age, commenced their suit in chancery against the executors Lyman and King and the administrator of Buel, claiming that the amount of said legacy had never been received by them, and such proceedings were had therein, that, at the January Term, 1837, of the Supreme Court in Chittenden county, the executors were ordered to pay to the orators in that bill the amount of the said legacy and interest thereon, amounting in the whole to $1502,39; that the defendant, Harrington, who then resided out of the jurisdiction of the court, was duly notified by the administrator of Buel of the pendency of that suit and to assist in defending the same; that Lyman and King neglected to pay the amount ordered in the suit, and that payment of the same was made by the orator, as administrator *de bonis non* of Buel, and that he had also been compelled to pay a large sum as expenses in defending said suit. And the orator averred that Lyman and King had been, from the time of the payment, insolvent, and that the defendant had refused to repay to the orator any portion of the amount so paid by him. And the orator prayed, that the defendant might be decreed to repay to him one half of the amount so

Marsh, Adm'r, *v.* Harrington.

paid by him, as administrator *de bonis non* of Buel, and one half of the expenses and charges of said administrator in defending that suit.

The defendant filed his answer, admitting that William C. Harrington executed his last will and testament, and thereby bequeathed to the children of Phineas Lyman a legacy of $1000, and appointed executors, as alleged in the orator's bill, and that the executors accepted the trust and executed a joint bond for the faithful administration by them of the estate ; but the defendant insisted, that, previous to the giving of the bond, an agreement was made between the executors, that Ozias Buel should be the acting executor, and should receive and control the assets of the estate ; and that the will was proved and the bond given in pursuance of that agreement ; that, immediately after the will was proved, the said Ozias took possession of all the assets of the estate, except a small portion, consisting of demands, which were left, by the consent of said Ozias, in the hands of Phineas Lyman, who was then a practising attorney, for collection, and also excepting certain goods, &c., amounting in all to about $1477, which came into the hands of this defendant and were fully accounted for by him to the probate court ; that William C. Harrington, by his will, bequeathed other legacies, to wit, $1000 to the children of William Geer, and the same sum, respectively, to the children of George Wadsworth, the heirs of Ebenezer Lyman, Jr., deceased, and the children of Joseph Harrington, all which said legatees, as well as the children of Phineas Lyman, were minors, and so continued until after January 1st, 1820 ; that at the December term, 1817, of the court of chancery Ozias Buel filed his petition, in the name of all the executors, setting forth the said bequests and the minority of the legatees, and praying that the executors might be allowed, by decree of the court, to pay the legacies to the parents and natural guardians of the legatees respectively ; that the parents and natural guardians of the said legatees respectively and the residuary legatees of the testator appeared, and assented, in writing, to the granting of said prayer, and also prayed said court to determine whether interest, and if so, from what time, should be paid on the legacies ; that the court of chancery thereupon decreed, that payment of the legacies should be made to the parents of the legatees respectively, with interest after one year from the decease of the testator, and that such parents, previous to the pay-

ment should respectively execute to the said Ozias Buel, who was by the decree constituted trustee for the legatees, a bond, in a penal sum double the amount of the legacy, conditioned for the payment of the legacy to the legatees, upon their becoming of full age, and should also execute mortgages to the said Ozias, to secure the performance of such condition,—the said Ozias being entitled to decide as to the title of the premises mortgaged.

The defendant farther set forth, that commissioners of insolvency were duly appointed upon the estate of William C. Harrington, before whom Phineas Lyman presented his claim, as a creditor of said estate, which was allowed at the sum of $2164,45, and for the discharge of which the said Phineas never had sufficient assets of the estate in his hands, except such as were paid and delivered to him by Ozias Buel; that on the third day of October, 1822, Ozias Buel presented to the probate court his account, purporting to be an account of the administration of the estate by the executors, which contained an item for the payment of the said five legacies, with the interest, one of which was the legacy to the children of Phineas Lyman,—which account was allowed by the probate court; that the said Ozias then represented to the probate court, that the payment to the children of Phineas Lyman was made pursuant to the decree of the court of chancery, above mentioned; but that, in fact, the said Phineas never complied with said decree, and never gave any bond, or mortgage, pursuant thereto. And the defendant averred, that he was informed, and believed, that Phineas Lyman did not, on the settlement of said account, claim to be allowed to retain in his hands, as the natural guardian of his children, or by virtue of the decree above mentioned, the amount of the legacy bequeathed to his children; but the defendant admitted, that the same was allowed to the executors, by the probate court, as payment of the legacy, and averred, that he believed it was so allowed, for the reason that the residuary legatees did not object thereto. The defendant also averred, that he was not present at the time of said settlement, and was not consulted in relation to it; that Ozias Buel was the acting executor, and had control of all the assets, the greater part of which was at all times in his hands; that such portions of the assets, as were placed by Ozias Buel in the hands of Phineas Lyman,

were placed there without the knowledge or consent of this defendant, and that he never consented that the said Phineas should retain the amount of the legacy to his children, without giving the security required by the decree of the court of chancery. The defendant admitted, that Phineas Lyman did retain the amount of the legacy to his children, but insisted that he retained it from funds placed in his hands by Ozias Buel.

The defendant also admitted, that the suit in chancery was commenced and prosecuted by the children of Phineas Lyman against the executors, and that the decree in favor of the said children was made, as alleged in the orator's bill,—but insisted, that the decree was made against the orator, upon the ground, that the money, so retained by Phineas Lyman for the legacy to his children, was raised from assets, which were either under the control of Ozias Buel, or which had been by him placed in the hands of said Phineas. The defendant also admitted, that he received notice from the administrator of Buel of the pendency of the suit in favor of the children of Lyman, and that the orator as administrator *de bonis non* of Buel, had paid the amount of the decree in that suit, and that Lyman King and Phineas Lyman were, at the time of the making of that decree, and ever since have been, insolvent, and that the amount so paid by the orator had never been repaid to him by either of the other executors.

The orator filed a general replication, traversing the defendant's answer. Copies of the probate records were filed as evidence by both parties, the facts shown by which are sufficiently detailed in the opinion of the court. The parties agreed, that the case of *Sparhawk et al. v. Adm'r of Buel et al.,* 9 Vt. 41,—being the case above mentioned, in favor of the children of Phineas Lyman against the executors,—should be referred to, and the decree therein be used as evidence in this case. The defendant also filed the deposition of Lyman King, one of the executors, who testified, in substance, that Ozias Buel, before accepting the trust, desired to have the control of the estate, without interference by the other executors ; that upon this understanding the bond for administration was given and letters testamentary issued ; that the bulk of the estate went into Buel's hands (he refusing to administer on any other

terms) and he was principally active as executor ; and that the deponent never received any property of the estate, nor acted as executor, except occasionally, by way of advice.   This deposition the parties agreed should be received, subject to all exception.   It was also agreed by the parties, that the executors have accounted for and paid over to the persons thereto entitled, by order of the probate court, (excepting the funds remaining in the hands of Phineas Lyman) all funds, property and assets, by them, or any of them, received as such executors.

The court of chancery decreed, that the defendant pay to the orator one half of the amount paid by him upon the decree in favor of the children of Lyman, and one half of the expenses incurred in defending that suit, and the costs in this suit,—the whole amounting to the sum of $1033,12 ; from which decree the defendant appealed.

. *A. Peck* for orator.

The material allegations in the bill are all admitted in the answer, clearly proved by the evidence ; and the orator is entitled to a decree for a *moiety* of the moneys paid and expenses incurred by him, unless the answer and the evidence filed by the defendant make out a sufficient defence.

To prove the agreement, alleged to have been made between the executors before the will was proved, the defendant relies upon the deposition of Lyman King, one of the executors.   But King is not a competent witness, since, if the orator recovers, King is liable to the defendant for contribution ; and it is no answer to say, that, if the defendant recover, King is liable to the orator ; because in the one case he is liable to contribute his proportion of the costs of the suit, as well as the debt, and in the other case of the debt only.   1 Stark. Ev. 150, 168.   *Riddle* v. *Moss*, 7 Cranch. 206, [2 Pet. Cond. R. 473.] *Trelawney* v. *Thomas*, 1 H. Bl. 303. He is also interested in the record,—since, in the event of a recovery by the orator, the record in this suit would be evidence against the witness, in an action brought against him by the defendant for contribution. 1 Stark. Ev. 118.

The record evidence shows that Buel received and controlled the bulk of the estate ; but the active participation of the defendant in the administration is also shown.

Lyman was a creditor of the estate to the amount of more than $2000. He was an attorney at law, and, for aught that appears, a proper person to be employed as a collector. Buel placed various demands in his hands for collection, as he lawfully might; and Lyman, being a co-executor, was not obliged to account to Buel for the proceeds, but was equally entitled to retain them in his own hands. Buel was not made liable, in the former suit, on the ground of *negligence*, nor has any negligence been shown in him, either in that suit, or in this. The recovery was on two grounds,—First, That Buel had a joint control of the assets;—Second, That the obligation, assumed by the joint bond of the executors, made each responsible for the other. *Sparhawk et al* v. *Adm'r of Buel et al.,* 9 Vt., 41, 73–81. *Brazer* v. *Clark,* 5 Pick. 96. *Rathbone* v. *Warren,* 10 Johns. 587. *Morrow's Adm'r* v. *Peyton's Adm'r,* 8 Leigh 511.

Harrington cannot be absolved from contribution by reason of Buel's negligence, unless that negligence operated to the ultimate injury of Harrington. It was not negligence, to entrust demands with Lyman for collection, as he was then responsible and a joint executor. Buel was not guilty of a *devastavit;* his only fault was, in paying to the residuary legatees, when the specific legatees were entitled to priority; but had he paid the specific legatees, the executors would have been liable to the resideary legatees; so that this fault did not operate to the injury of Harrington.

*C. Adams* and *W. Weston* for defendant.

This being a claim for contribution, the orator must bring his case within some acknowledged principle of equity, before he can recover. He must establish two points;—1, That the recovery sought to be equalized was upon some liability common to Buel and Harrington, and without negligence or fault on the part of Buel; and—2, That both parties stand in the same relation to each other, of principals, or sureties.

The recovery was not upon a liability common to Buel and Harrington, but on the separate liability of Buel, or the joint liability of Buel and Lyman. The orators did not rest their claim upon the bond. They relied on the fact, that they were legatees, that there was a sufficiency of assets, that those assets had passed into the

hands of Buel, and on the undisputed obligation, resting upon him, to pay out those assets to the persons legally entitled to receive them. Buel, instead of obeying the plain injunction of the law, paid out the assets to the residuary legatees, and was rightly held to make restitution for his own individual wrong.

The second point is equally clear for the defendant. The claim for contribution does not rest on the relation the parties bear to the creditors, or legatees, but on the relation they bear to each other. Executors, as such, are all holden to respond the claims of creditors, or legatees, and as to them they may all be considered as principals; but as between themselves the relation they bear to each other is not at all indicated by the bond, but grows out of the responsibility arising from the possession of the assets. From the nature of the case each becomes responsible to the other for the assets entrusted to him ; and hence he, who has the assets, is principal, and the others are his sureties. *Deering* v. *Winchelsea*, 2 B. & P. 270. *Craythorne* v. *Swinburne*, 14 Ves. 159. *Taylor* v. *Savage*, 12 Mass. 98. *Batchelder* v. *Fiske*, 17 Mass. 464, *Skillin* v. *Merrill*, 16 Mass. 40. *Kirby* v. *Turner*, Hopk. Ch. Rep. 309, 329–32.

We insist, that Lyman King is a competent witness in this suit. He is not a party, and the record cannot conclude him.

The opinion of the court was delivered by

WILLIAMS, Ch. J. The object of the orator's bill is to obtain from the defendant, Harrington, a contribution towards the amount, which the estate of Buel has been compelled to pay to the children of Phineas Lyman, in pursuance of a decree of the court of chancery in this county, made at their January term, 1837. The orator's intestate, Ozias Buel, the defendant, Isaac R. Harrington, together with Lyman King and Phineas Lyman, were appointed executors of the last will and testament of William C. Harrington, who died in the year 1814. They accepted the trust, and gave the required bond to the court of probate, administered upon the estate, made a settlement in the court of probate of their accounts as executors, and were credited for all the legacies mentioned in the will. Among other credits, Phineas Lyman was credited by the probate court for the sum of one thousand dollars and the interest thereon, being the

legacy left by William C. Harrington to the children of the said Lyman. On the 18th of March, 1823, the executors, having produced satisfactory vouchers for the payment of all the debts and legacies, including the legacy to the residuary legatees, were acquitted and discharged of their trust, as executors. The children of Phineas Lyman, after they arrived at full age, contested the payment of the legacy to them, and, for the recovery thereof, instituted a suit in chancery against all the executors of William C. Harrington, and, after a protracted litigation, succeeded in obtaining the decree against the executors, before mentioned, at the January term of this court,—as reported in 9 Vt. Reports 41. The amount of this decree the estate of Buel has been compelled to pay. It is admitted, that the other executors, Lyman and King, are insolvent.

In the case before us the proceedings in the suit in favor of the children of Lyman against the executors of Harrington are in evidence, and reference is had to that case, as reported in 9 Vt. Rep. 41. This only makes the decree, and the facts found, on which the decree was based, legitimate evidence in this case. Neither the observations of the learned judge, who pronounced the decree in behalf of the majority of the court, nor of the learned judge who dissented, can be treated as legitimate evidence at this time. It is sufficient to say, that the court found, that a legacy had been left to the children of Phineas Lyman, who were the orators in that bill, that it had not been paid, that nothing had taken place to discharge the executors of Harrington from the payment, and that, particularly, as it respected Buel's estate, his representatives were not protected by the commission of insolvency, which had issued for the purpose of ascertaining the debts against his estate, and the neglect to present this claim. Whatever was said about the misapplication of the funds applied equally to all the executors. They were liable for all the assets, which came into their hands. If they paid the residuary legatees without first paying the specific legacies, they would be liable for the latter. If they paid the speficic legacies, they were liable to the residuary legatees for all the remaining assets in their hands. If the funds were lost through the negligence, remissness, or insolvency, of any of the executors, inasmuch as they jointly proved the will, took out letters testamentary, and gave a joint

Marsh, Adm'r, *v.* Harrington.

bond, they were all liable for what was thus lost, either to the specific or residuary legatees, who might fail of receiving their due proportion of the estate in consequence of such loss.

It was found in that case, and it is found in this, from the testimony taken, that Lyman, one of the co-executors, received funds of the estate, that he had sufficient to pay the legacy to his children, that he claimed to retain it on that account, that he received credit for the same in the probate court, that he neglected, or refused, to give the security required by the order of the Supreme Court, made at their December term, 1817, that he had wasted the funds of the estate to the amount of the legacy to his children, and had not paid them, and that he became utterly insolvent and so remains at this day. There is no reason, why the consequence of this should be visited alone on the estate of Buel, unless there has been some negligence, or remissness, or improper conduct, on the part of Buel, in permitting Lyman to waste these funds, which should make him alone liable to bear the whole loss, or which would have made him liable to his co-executors, if the amount of the decree before mentioned had been collected of them, instead of being collected from his estate.

From a careful examination of the testimony we can discover no such negligence, remissness, or impropriety, in the conduct of Buel, in relation to this estate, as to make him alone liable for the failure of Lyman. It is claimed, that he acted solely as executor; and for this the testimony of King is relied on. Waiving the consideration, whether King is a competent witness, there is nothing in his testimony, which alters the relative situation of the executors. The contract, to which King alludes, could not prevent the other executors from managing any part of the estate, if they thought proper. Nor could Buel, by virtue of any such contract, call any funds out of the hands of the other executors, or forbid or prevent them from performing any duty, which they thought proper to take upon themselves. It appears, that both Lyman and the defendant, Harrington, had the care, custody and management of some part of the estate. This contract could only make Buel the agent of the other executors, and not liable, except he acted improperly in his agency. Over such part of the estate of William

C. Harrington, as was in the hands of Lyman at the decease of Harrington, Buel could have had no control.

There was nothing unwise, or imprudent, in Buel, in delivering to Lyman, for collection, the notes and accounts belonging to the estate, when we consider, that Lyman was then in good circumstances, and his peculiar relation to the testator,—being his partner and brother in law. It was not only prudent, but highly proper, that he should be entrusted with the collection of the debts in favor of the estate. And farther, taking into consideration, that Lyman was a creditor of the estate to the amount of over two thousand dollars, we do not see, that there was any impropriety in Buel, in passing over to Lyman, whether for collection, or in payment of his claim allowed against the estate, the note against Samuel Campbell, in January, 1817,—especially when we advert to the fact, that on the settlement of Lyman's account, after debiting him with the Campbell note, it left but an inconsiderable balance against him, without crediting him with the legacy; and when he was credited with the legacy, he was a creditor of the estate. There was no misconduct, or carelessness, in delivering to him the Campbell note, whether for collection, or otherwise, under the circumstances, then existing.

Until the order of the Supreme Court, made in December, 1817, there could have been no want of prudence, or care, in permitting Lyman to retain, out of the debts in his hands for collection, or out of the debts due to the estate, an amount sufficient to pay his debt allowed by the commissioners, his charges against the estate, and the legacy to his children, even if it had been in the power of Buel to have prevented it. After the order made by the Supreme Court, in 1817, it does not appear, that Lyman received any thing farther, belonging to the estate, and there was no power in Buel, or the other executors to compel him to give the security required by that order; and we see no reason whatever for visiting on the estate of Buel the whole loss, occasioned by the insolvency and mismanagement of his co-executor, Lyman. The order made by the court of probate, crediting Lyman for the legacy to his children, and the exertions of Buel, to exonerate the estate from all liability on account of that legacy, clear him from the imputation of having improperly entrusted Lyman with the funds belonging to the estate of William C. Harrington.

Crane *v.* Thayer.

The conclusion, from the whole evidence, is irresistible, that the estate of Buel was made liable in consequence of his being a co-executor with Lyman, and for property wasted by Lyman without any fault, or neglect, on the part of Buel; and the result is, that his administrator is entitled to a contribution from the defendant, the only remaining solvent executor. The decree of the chancellor, to this effect, is affirmed, with additional cost; and the case will be remanded to the court of chancery, to execute this decree.