PARIS FLETCHER, CALVIN SOLACE, SAMUEL SWIFT, AUSTIN JOHN-
SON, PETER STAR, BARNARD KETCHUM, EBENEZER N. BRIGGS,
DANIEL FARRINGTON, ARUNAH W. HYDE AND JONAS CLARK *v.*
JOHN JACKSON, LEVI JACKSON, HIRAM WARNER AND ABIGAIL
WARNER, his wife, HENRY STEBBINS AND MARY ANN STEB-
BINS, his wife, GEORGE W. PALMER AND ELLEN PALMER, his
wife, AND JANE JACKSON.

[IN CHANCERY.]

*Secondary evidence of lost paper. Effect of recital. Judgment
against surety evidence in suit for contribution. Contribution be-
tween sureties. Joinder of plaintiffs. Several liability of defend-
ants. Release by surety to principal discharges co-sureties. When
court of chancery will not interfere. Practice.*

Fletcher et al. *v.* Jackson et al.

When a paper is lost, it is necessary, in order to lay the foundation for introducing secondary evidence of its contents, that reasonable search should be made in the place, where the paper is last known to have been, and if not found there, then inquiry must be made of the persons last known to have its custody.

Where, in a bond executed to secure the faithful performance, by the principal, of certain duties imposed upon him by an indenture to which he was party, the terms of the indenture are recited, this recital is conclusive upon the signers of the bond.

The judgment recovered in a suit upon such bond, against a part, only, of the sureties, which has been satisfied by them, is competent evidence, in a subsequent suit brought by them against their co-sureties, for contribution, to show the amount of the payment made by the plaintiffs and the circumstances under which it was made, but not for the purpose of proving the liability.

The general rule is, that in a collateral undertaking by way of guaranty, where a suit is necessary to fix the liability of the guarantor, the first judgment is *prima facie* evidence of the default. But where the guarantor is liable without suit against the principal, the judgment against him is regarded as strictly matter *inter alios*. REDFIELD, J.

A surety may compel contribution from his co-surety for the costs and expenses of defending a suit, if the defence were made under such circumstances, as to be regarded as prudent.

When sureties, against whom a judgment has been recovered, pay such judgment jointly, they may join in bringing a bill in equity to compel the heirs of a deceased co-surety to make contribution; and a decree may be made, upon such bill, against the defendants severally, for the amount, for which each is liable.

If a surety, against whom a suit is pending upon the bond signed by him, execute and deliver a general release to the principal of all liability for any sums, for which the surety is liable upon such bond, or for which he may be held liable in such suit, this will operate as a release of all collateral obligations resting upon his co-sureties to contribute their proportion of the sum recovered against him in that suit and subsequently paid by him. The surety, by releasing the principal, becomes himself principal, as to any liability thus assumed by himself. By contracting not to sue the principal, he impliedly binds himself not to do that indirectly, which he had assumed not to do directly.

And this result will not be affected, even in a court of equity, by the fact, that such release to the principal was executed upon nominal consideration, and for the mere purpose of enabling the surety to avail himself of the testimony of the principal in the suit then pending, and that this was the only means, by which he could reduce the recovery in that suit to a sum less than the pen-

Fletcher et al. *v.* Jackson et al.

alty of the bond, and that the testimony of the principal did have the effect thus to reduce the amount ultimately recovered by the plaintiffs in that suit.

And a court of equity will not interfere to restrain this effect of the release, even if it be shown, that the party executing the release mistook its operation in respect to his co-sureties, or did not have that in mind; for any release, to remove the interest of the principal in the suit pending, must operate not only upon the direct claim against the principal, but upon all collateral remedies for the same thing; and the party executing the release, if he understood the subject matter of the contract, was bound to know, that it must cut off all contribution from co-sureties, to the extent of the release, in order to produce the immediate end in view.

Nor will the result be affected by the consideration, that the party, either through mistake of the law, or from over caution and to make the matter secure, executed a general release " from all liability," when a more restricted release might have answered his purpose equally well. A court of equity will not interfere to restore the party to the rights, which he has thus unnecessarily released.

And as matter of form, if any such interference of the court be desired, upon the coming in of the answer setting up such defence in favor of the co-sureties the orator should file a supplemental bill, stating the grounds upon which he desires to contest the release, so as to bring the matter properly in issue before the court.

Appeal from the court of chancery for the county of Addison. It was alleged in the bill, that the orators, together with John Jackson, Seymour Sellick, Royal H. Waller, John Howden, Edgar L. Ormsbee, Azariah Rood and Edward Jackson, on the twenty fifth of April, 1846, as sureties for Calvin C. Waller as principal, executed a bond in favor of Chester Baxter, William Steele and William Swett, in the penal sum of fifteen thousand dollars, with a condition thereto annexed, reciting that Ephraim D. Briggs, Chester Baxter, William Steele, Daniel Farrington, John Francis, George Lyman, and divers other persons, had, by an indenture executed by each and every of them, associated themselves together for the purchase and sale of real estate in certain of the western states, and for that purpose had agreed, by said indenture, to raise a fund of fifty thousand dollars, and had appointed the said Calvin C. Waller the lawful agent and attorney of the said association, in the name of said Baxter, Steele and Swett, trustees of said association, to make such pur-

chases and sales, and had agreed to allow said Waller $1000,00 a
year for the term of five years, and allow him certain other immuni-
ties, in the indenture set forth, for his services as such agent, to
which indenture Waller was a party of the first part, and Baxter,
Steele and Swett were parties of the second part, and the several
persons composing the association were parties of the third part,
and, after such recital, providing, that, the parties of the second and
third part to said indenture keeping in good faith towards Waller
all the covenants and stipulations in the said indenture set forth, on
their part to be performed, if the said Waller should, upon his part,
execute the duties of his said agency with fidelity and good faith to
the said parties of the second and third part, agreeably to the true
intent and meaning of the said indenture, and according to such
instructions as he should from time to time receive from said trus-
tees, in conformity with the stipulations of said indenture, then the
said bond should be void, and otherwise of force.   And it was far-
ther alleged, that Waller did accordingly enter upon the duties of
his appointment, as such agent, and received funds of the associa-
tion and therewith made purchases of real estate, and from time to
time made sales of the real estate of the association, and continued
to act as such agent for the period of four years, and until his
agency was revoked by the association, but that he did not therein
conduct with fidelity to the association, or the trustees, but appro-
priated to his own use a large amount of their funds, and of the
avails of sales made by him, of all which he neglected and refused
to render any account; that in August, 1837, John Jackson, one of
the signers of the bond, died; that in October, 1841, Baxter, Steele
and Swett, the obligees in the bond, commenced a suit upon the
bond against the orators and the other surviving signers, and ser-
vice was made upon all except Calvin C. Waller, Royal H. Waller,
John Howden and Azariah Rood, who had previously removed from
this state and beyond the reach of process, and the suit was entered
in court, and the orators appeared and made defence, and such pro-
ceedings were had, that, at the March Term, 1847, of the supreme
court, the plaintiffs recovered judgment in that suit against the ora-
tors and such of the other signers of the bond as had been served
with process, for $13,819,86 damages, and $207,35 costs; that on
the sixth day of March, 1847, the orators paid the full amount of

that judgment, and that, in addition thereto, they had expended the sum of $579,00 in defending said suit; that Calvin C. Waller, Royal H. Waller, Edgar L. Ormsbee, Edward Jackson, Azariah Rood and John Howden are, and have been ever since the recovery of said judgment, wholly irresponsible and insolvent, and that Seymour Sellick died insolvent during the pendency of said suit; that John Jackson, who died previous to the commencement of that suit, died possessed of a large estate, leaving the defendants his heirs at law, and that at the time of the recovery of the judgment upon the bond the time limited by the probate court for presenting claims against his estate had expired, and that the orators, within one year after the recovery of the judgment against them, applied to his administrator for payment of one eleventh part of the amount of said judgment and the expenses of defending the same, and that payment was refused, for the reason that the estate had been fully distributed among the heirs; and that the defendants, as heirs, had each received their distributive share of said estate, and were liable to pay to the orators one eleventh part of the payments and expenses above named, but wholly refused to do so. And the orators prayed, that the defendants might be decreed to make such payment, and for general relief.

The defendants answered, admitting the decease of John Jackson at the time named in the bill, and that the defendants were his heirs at law, and that each received a distributive share of his estate, amounting to about $1400,00 each, but averring, as to the other facts stated in the bill, that they were unable to answer, and therefore left the orators to their proof. Subsequently the defendants filed a supplemental answer, in which they alleged, that if the facts stated in the bill were true, in relation to the execution of the bond, and the failure of Waller to perform faithfully the duties of his agency, and the commencement of the suit upon the bond, and the recovery of judgment therein, and the payment of such judgment, yet that, during the pendency of that suit upon the bond, the orators, together with Seymour Sellick, then living, Edgar L. Ormsbee and Edward Jackson, did, by writing under their hands and seals, release Waller from all liability to them, collectively or severally, on account of their signing the bond, and from all accountability to them for any sums, for which they were accountable, or might be

made accountable in the suit then pending thereon; and the defendants insisted, that if they would otherwise have been liable to the orators for contribution, yet that they were thereby released from such liability.

These answers were traversed and testimony was taken, the substance of which is sufficiently stated in the opinion delivered by the court. The original bond was alleged to have been lost, and testimony was taken, tending to prove its loss and contents, which were substantially as above stated. The indenture, recited in the condition of the bond, was not produced, nor was there any evidence in reference to it. The release, mentioned in the supplemental answer, was proved, and was signed by the persons named in the supplemental bill, and was in these words :—

" We the undersigners, in consideration of the sum of one dollar ' to us paid by Calvin C. Waller, the receipt whereof we do hereby ' acknowledge, do hereby release, acquit and discharge the said ' Waller of and from all liability to us, either collectively or sev- ' erally, on account or by reason of our signing a bond, as sureties ' for the said Waller, in the penal sum of fifteen thousand dollars, ' made payable to Chester Baxter, William Steele and William Swett, ' conditioned that the said Waller should faithfully act as the agent ' and attorney for said persons as trustees &c., upon which bond ' a suit is now pending in the county court in and for the county of ' Windsor, and entered at the November Term of said court. And ' we hereby discharge said Waller of and from all accountability to ' us for any sums, which we are accountable for, or which we may ' be made accountable for, in the said suit. Brandon, June 6, ' 1842."

The court of chancery, December Term, 1850,— BENNETT, Chancellor,—decreed, that the orators recover against each of the heirs of John Jackson one sixth part of one thirteenth part of the amount of damages recovered against the orators in the suit upon the bond, as alleged in the bill, and one sixth of the costs of this suit. From this decree the defendants appealed.

*Starr* and *Briggs* for orators.

1. The claim of the complainants against the heirs of John Jackson is founded on the provisions of the statute relating to the "settlement of estates," as well as on general principles of equity. Rev. St. 284, 285, §§ 45, 46, 48. *Jones* v. *Cooper*, 2 Aik. 54. *Lowry* v. *Stevens*, 6 Vt. 113. *Bachelder* v. *Fisk*, 17 Mass. 464.

Fletcher et al. *v.* Jackson et al.

2. Whatever may be the rule of law with respect to the rights of the complainants to proceed jointly against the defendants for a contribution, they have an undoubted right to sue jointly in a court of equity, which accommodates its decrees to the rights of the respective parties and the exigencies of the case. 1 Story's Eq. 475, 482. 2. Mad. Ch. 177, 179. *Cuyler* v. *Ensworth,* 6 Paige 32. *Hyde* v. *Tracy,* 2 Day 482. *McConnell* v. *McConnell,* 11 Vt. 290.

3. The discharge of Waller by the complainants was executed for a nominal consideration, for the purpose of calling him as a witness in defence of the suit upon the bond,—his testimony being indispensable to the defence, and he being then and ever since wholly insolvent. The complainants were bound to make a faithful defence to that suit, in order to hold the co-sureties to a contribution; and that could not be done without the testimony of Waller. *Hinsdill* v. *Murray et al.,* 6 Vt. 36. *McCollum* v. *Hinckley et al.,* 9 Vt. 143. *Marsh, Adm'r,* v. *Harrington,* 18 Vt. 150.

4. No claim or right of action in favor of the complainants against their co-sureties had accrued at the date of the discharge to Waller; it would not, therefore, at law, bar their right of recovery against the defendants. 1 Swift 300. *Learned* v. *Bellows,* 8 Vt. 84. *Keeler* v. *Bartine,* 12 Wend. 110. 5 Bac. 704. *Chandler* v. *Herrick,* 19 John. 129. *Quarles* v. *Quarles,* 4 Mass. 688. *Hastings* v. *Dickinson,* 7 Mass. 155. *Dart* v. *Dart,* 7 Conn. 250.

5. The discharge of Waller by the complainants did not impair his liability to John Jackson, or his heirs, and could not, in equity, affect their liability to contribute to the complainants. 1 Story's Eq. 477, 498. *Bank of Montpelier* v. *Dixon,* 4 Vt. 587. If the discharge of Waller, under the circumstances, would *at law* operate as a discharge of the defendants, it is *stricti juris,* a technical rule, that will not govern in chancery. 1 Cow. & H. Notes 214. 2 Eq. Dig. 416. 2 Story's Eq. 542, 547. *Quick* v. *Stuyvesant,* 2 Paige 84. *Chase* v. *Barrett,* 4 Paige 148. *Norton* v. *Wood,* 5 Paige 249. *Fuller* v. *Crittenden,* 9 Conn. 401.

6. Chancery will relieve against the operation of such a rule, and will restrict the operation of the discharge to the immediate parties to it, under its general rules of granting relief in cases of surprise and against penalties and forfeitures. 1 Fonbl. Eq. 434. 1 Story's

Eq. 131. 2 Ib. 172. 2 Eq. Dig. 416, §§ 15–21. 2 Sch. & Lef. 31. *Mower* v. *Hutchinson,* 9 Vt. 242.

7. Chancery will limit the operation of the discharge to the specific purpose, for which it was executed. *Wesley* v. *Thomas,* 6 Har. & Johns. 24. *Boyd* v. *Dunlap,* 1 Johns. Ch. R. 482. *Wiser* v. *Blachly,* Ib. 607. *Johnson* v. *Johnson,* 11 Mass. 359. *Whelan* v. *Whelan,* 2 Cow. 537. *Slocum* v. *Marshall,* 2 Wash. C. C. 397. *Flagg* v. *Mann,* 2 Sumn. C. C. 487. *Claggett* v. *Salmon,* 5 Gill & Johns. 314.

8. The complainants are entitled, in equity, to recover of the defendants a proportion of the costs in the judgment paid by them, and also of the expenses of defending the suit on the bond. *Marsh, Adm'r,* v. *Harrington,* 18 Vt. 140. *Pennell* v. *Woodburn,* 7 C. & P. 117. *Lewis* v. *Peake,* 7 Taunt. 153. *Neale* v. *Wyllie,* 3 B. & C. 533.

*C. L. Williams* for defendants.

There is no sufficient proof of there ever having been such a bond, as that described in the bill. The original, or what purported to be the original, is shown to have been delivered to Johnson, and there is nothing to show, but that it is still there. Without the production of the original, or Johnson's testimony as to its loss, all the testimony introduced as to its contents is inadmissible. 3 Phil. Ev., Cow. & H. Notes, 1217, 1226, 1229. *King* v. *Inh. of Castleton,* 6 T. R. 236. *King* v. *Denio,* 14 E. C. L. 102.

The judgment recovered in the suit upon the bond is not evidence against these defendants, for the purpose of proving Waller's delinquency. Neither they, nor their ancestor, nor any person representing him, were party or privy to the suit, in which it was rendered. 1 Greenl. Ev., §§ 527, 538. 1 Phil. Ev. 326. *Sturgis* v. *Beach,* 1 Cow. 507. *Burrill* v. *West,* 2 N. H. 190. *Thompson* v. *Young,* 2 Ham. 334. *Bramble* v. *Poultney,* 11 Vt. 209. The other evidence in the case is wholly insufficient to prove any breach of the bond on the part of Waller.

The indenture, mentioned in the bond as containing the obligations and duties assumed and to be performed by Waller, the breach of which the complainants must establish, is not produced, nor is any evidence given of its existence or contents. The rule is given

in all treatises upon evidence, that where the condition of a bond is for the performance of covenants in some other deed, proof must be given of the execution of the deed referred to, as well as of the breaches assigned. 2 Phil. Ev. 169. 2 Greenl. Ev., § 289. 2 Stark. Ev. 309.   Esp. Ev. 120.   Rosc. Ev. 316.

If the defendants are liable to contribution they are liable each individually, and only in proportion to their respective shares. Slade's St. 350, § 80.   Rev. St., c. 49, § 50.   The proportion of each should be ascertained and separately adjudged, and the burden of collecting of those residing out of the state will be thus properly thrown upon the complainants.

The release, which the complainants gave to Waller, discharges *any claim*, which they otherwise might have had against their co-sureties.   The effect of a discharge, or even of an extension of time, given by a creditor to the principal, is to release the surety.   Theob. Pr. & Sur. 114, 127.   9 Vt. 146.   18 Vt. 614.   One reason of this rule is, that the surety's situation is, or is likely to be, impaired by such discharge, or extension of time ; and another reason is, that if it were otherwise, the discharge of the principal would not avail him, and an extension of it to the surety is necessary, to secure the intended effect of discharging the principal.   *Ex parte Wilson*, 11 Ves. 410.   *Ex parte* Gifford, 6 Ves. 805.   These reasons are applicable to the present case.   The discharge of a surety releases his co-surety to the extent of the claim, which he would otherwise have had against the discharged surety.   *Hodgson* v. *Hodgson*, 2 Keen 704. *Onge v. Truelock* 2 Molloy 31, is a direct authority for the defendants. It decides, that if, in a suit for contribution, any of the funds of the principal, or of the co-sureties, should have been lost on account of the *laches* of the plaintiff in not having pursued them, his claim for contribution would be affected to the extent, to which the sureties, against whom relief is sought, may suffer by such neglect.   Here they have not simply by their *laches*, but by their direct act of discharging the principal, cut off all claim of indemnity, which these defendants would have otherwise had upon their principal.   It seems to be well settled at law, that, if a person release one of his co-contractors, or co-obligors, he cannot recover of his co-obligors that which he would have been entitled to recover of the one discharged, and that, if either of them should pay more than their just propor-

tion, they must look for that proportion of the excess, which they would have been entitled to recover of the one discharged, to the one discharging him. *Duke* v. *Pownal,* 1 M. & M. 430, [22 E. C. L. 350.] *Beckett* v. *Wood,* 6 Bing. 380, [37 E. C. L. 418.] The avowed reason for these decisions, that is, that the releasor must be considered as having voluntarily abandoned, against all, that which, but for his own act of releasing, he might have recovered of the person released, is surely applicable here. It is no answer to this, that Waller is insolvent;—a mere liability to be prejudiced is sufficient to discharge the surety. Pitman on Pr. & Sur. 171. *Samuel* v. *Howath,* 3 Mer. 272. *Bowmaker* v. *Moore,* 7 Price 223. Theob. Pr. & Sur. 122.

*Hobart* v. *Stone,* 10 Pick. 215, is decisive of the present case. It is there held, that a co-surety's liability to contribute is a collateral obligation only, that the principal is originally liable to reimburse the whole amount paid by the surety, and the obligation of the co-surety is contingent only, dependent upon the inability and failure of the principal thus to reimburse. It follows, as a necessary consequence, that whatever discharges the principal will of course discharge the collateral and contingent liability of the co-surety.

The opinion of the court was delivered by

REDFIELD, J. This is a bill in equity, brought by the orators, who were joint signers of a bond; with the defendants' ancestor, for the faithful discharge of duty, by Calvin C. Waller, as agent and attorney, in regard to certain matters undertaken by him. He failed in that undertaking, and suit being brought on the bond, against the signers, with the exception of Jackson and some others, judgment was obtained, for the default of Waller, and the plaintiffs paid the amount, being some fourteen thousand dollars, (including costs,) besides counsel fees. This bill is brought to compel contribution on the part of Jackson's heirs, he having deceased, and his estate having been distributed to the defendants, as his heirs. In the course of the trial of the suit for Waller's alleged defalcations, it became important, and indispensable almost, for the interest of the signers of the bond, to make use of the testimony of Waller, if that could be done. For as he was the only one, who knew any facts, sufficient to reduce the liability below the penalty of the bond, $15,000, it would

Fletcher et al. *v.* Jackson et al.

be necessary to suffer judgment for that amount, or else resort to the testimony of Waller, which could only be used, by releasing his interest,—which the plaintiffs did, by executing to him a general release of all liability to them, by reason of the plaintiffs having signed the bond as surety for him. He was admitted as a witness, and the amount of the recovery reduced something like two thousand dollars, and there was a reasonable prospect, at the time, that the recovery would, in that way, be reduced to a considerably lower sum. The other facts necessary to understand the points decided by the court, will appear in the course of the opinion.

1. A question is made in regard to the proof, which was introduced to show the loss of the original bond. This is a point not very material to the ultimate determination of the case, as, if the proof, which was offered, is insufficient, it can hereafter be supplied, if the case can be sustained upon other grounds. The general rule upon this subject is familiar, that reasonable search shall be made in the place, where the paper is last known to have been, and if not found there, then its present place of deposit shall be searched out, in the usual mode, by making inquiry of those most likely to know its whereabouts,—and that is, of course, of the person last known to have had its custody. In the present case, the proof seems to be somewhat defective, in not producing the testimony of Johnson, who, as cashier of the Bank of Woodstock, seems now last to have had the paper in his custody. The Bank of Woodstock seems to have been the only place of deposit for the bond, during the trial of the former suit, and since, so far as we can now learn. And there does not seem to be any certain legal proof in the case, that the bond is not now in the bank, although it is highly probable, that it is not, as matter of mere conjecture, rather than of legal proof. And if not there, there is nothing to show when, or by whom, it was removed. But we have expended but little time upon this point.

2. Some question is made, whether distinct proof should not have been adduced, in this case, to show the terms of the original indenture, by which the association was constituted. But that is recited, in substance, in the bond executed by the plaintiffs and Jackson, and this recital, upon general principles of estoppel, will conclude the defendants.

3. How far the record of the recovery against the plaintiffs, upon

trial and full defence, the testimony of Waller being used, is to be regarded as *prima facie* evidence of Waller's default, it is not strictly·necessary to determine here, perhaps, as there is some testimony beyond this, and the record is clearly competent evidence in the case, to show the amount of the recovery against the plaintiffs. The general rule undoubtedly is, that in a collateral undertaking by way of guaranty, where a suit is necessary to fix the liability of the guarantor, the first judgment is *prima facie* evidence of the default. But where the guarantor is liable without suit against the principal, the judgment against him is regarded as strictly matter *inter alios.* The judgment of eviction, in order to show a breach of the covenants of warranty, is a case of the first class. The judgment of eviction is a necessary step in making out the liability of the warrantor, that is the *casus fœderis.* So, too, generally, I apprehend, when any one undertakes to indemnify against the consequences of a suit, or that a suit brought shall be effectual, the judgment, in either case, being the *casus fœderis,* is *prima facie* evidence of the liability.

And on the other hand, where the suit may, in the first instance, be brought directly against the guarantor, the judgment against the principal, without notice to the guarantor, is not evidence ; and so, too, if the guarantor have notice of suit against the principal, he is not obliged to concern himself in its defence, but may await a suit against himself, and then insist upon the right to contest the whole ground. The cases of joint and several obligors, and especially of sureties and co-sureties, as a general rule, we apprehend, have been ranked under the latter class of cases. *Bramble* v. *Poultney*, 11 Vt. 208. Hence it has been generally held in this class of cases, that a release of the joint debtor, from his liability to contribute to the costs and expenses of the suit, makes him, when not a party to the suit, a competent witness for the defendants, and that a joint debtor, when not sued, is always a competent witness for the plaintiffs, without a release. Many would therefore regard the release of the plaintiffs to Waller more extensive than it need to have been. But that question may arise hereafter. We think, therefore, that although the record was evidence, like any other fact, to show the amount of the payment made by the plaintiff and the circumstances under which it was made, we could scarcely regard it as evidence beyond

that. But there being some slight evidence in the case beyond that, we might not deem it necessary to open the case upon this ground. These extracts from the record are not evidence of the particular facts recited therein. The exemplification of the entire record is necessary for any such purpose.

4. The fact, that the case was referred, in the county court, and that judgment was entered by consent, in the supreme court, will not, under the circumstances, affect the judgment, as evidence in this case. The necessity of both those steps is sufficiently explained by the evidence.

5. In regard to the extent of the plaintiffs' right to contribution, as against the defendant, we think the rule laid down by this court in *Marsh, Adm'r,* v. *Harrington,* 18 Vt. 150, is strictly applicable. The right of the co-sureties, in such cases, to compel contribution for costs and expenses incurred in defending a suit, depends altogether upon the question, whether such a defence were made under such circumstances, as to be regarded hopeful and prudent. If so, the expenses of defence may always be recovered. The case of *Knights* v. *Hughes,* 3 C. & P. 467, is only a *nisi prius* case, and not much authority any way; and so far as it impugns the rule above laid down, it is in conflict with the general tenor of the cases upon the subject, and especially with the one last cited from our own reports. The general rule upon this subject is correctly stated in the American note to *Deering* v. *Winchelsea,* White & Tudor's Leading Cases in Equity ;—" In assumpsit the surety may recover of the co-surety what he has paid, *with interest and cost ;*" citing *Hayden* v. *Cabot,* 17 Mass. 169, which fully sustains the *dictum,* except that it is a suit by a surety against his principal; but the principle is the same, I apprehend ;—also *Wynn, Adm'r,* v. *Brook,* 5 Rawle 106, which I have not seen.

6. We entertain no doubt, upon the proofs in the case, that the plaintiffs paid the judgment against them jointly, and may well sustain this suit in their favor jointly. And we see no objection to the decree in the case being against the defendants severally, for so much as each is liable for. Their obligation is in its nature several and the statute seems to contemplate, that the remedy shall be several. Rev. St., chap. 49, §§ 51, 52.

The only serious difficulty, which we have found in the case, is

XXIII.    75

in relation to the effect, which the plaintiffs' release, given to Waller, the acknowledged principal, shall have in this suit for contribution against co-sureties, in relation to the very money recovered in the suit, in which the release was given. And although we have felt sincerely desirous of affording the plaintiffs that equitable relief, to which upon general principles they are no doubt entitled, it seems impossible to regard this release as having any less effect, at law certainly, than to cut off all collateral remedies for the principal thing released. This is one of the most obvious and universally recognized principles of the law of contract. It is, upon principle, almost too plain to admit of simplification. To suppose the contrary would be to expect the stream to continue when its fountains were cut off; or a weight to remain suspended, when the power which sustained it was removed, or that the obligation of the sureties is superior to that of the principal, or that it is something different from and independent of it. But all good sense and sound logic, all experience and all learning, teach the reverse.

In form it may not appear so obviously absurd, that the plaintiffs should claim to maintain this action, after having released Waller, as that a creditor, having released his principal debtor, should claim to recover of the surety, without reserving any right to go against the surety ; but, in fact, it is the same thing. The plaintiffs and Jackson were sureties, jointly, for Waller to the common creditor, the association who employed Waller. But there was also a subordinate suretyship for Waller, to each other. Upon payment of any sum of money for Waller to the common creditor, by any one of the sureties, a right of action accrued to that one to recover of Waller the whole sum paid, and the other sureties were severally bound, as surety for Waller, and collateral to his primary obligation, in their aliquot proportion of the entire sum. Thus these plaintiffs, by releasing Waller from all liability to refund any sum they should pay, of necessity thereby released all collateral obligations, resting upon the co-sureties, to contribute their proportion of the sum primarily due from Waller, and which had been released to him. So that, had the release been executed by but one of the sureties, and he subsequently compelled to pay the whole debt, he must be content to bear the loss. By releasing Waller he became principal, as to any liability assumed by himself. By contracting not to sue the

principal debtor, he impliedly bound himself not to do that *indirectly*, which he had assumed not to do *directly*.

It seems to us, that this is a matter, which cannot be made more perspicuous by argument, or illustration. The case of *Hobart* v. *Stone*, 10 Pick. 215, is fully in point, and the reasons assigned quite sufficient, and as satisfactory as could be given, as it seems to us. The court say, " A co-surety's obligation to contribute is collateral " only, and whatever discharges the principal will of course dis- " charge the co-surety." If the obligation of Jackson, to contribute his aliquot proportion of any sum the other sureties should be compelled to pay for Waller, by virtue of the joint undertaking of all, was really an obligation of suretyship for Waller, and merely collateral to his primary obligation to refund the whole sum paid,—and it seems to us impossible to regard it otherwise,—then it is clear, upon general principles, that when the plaintiffs put it out of their power to sue Waller, they lost all claim upon his sureties. For the law regards any modification of the principal contract, by which the right of action is suspended, for the shortest time, as a release of the surety. But it seems needless to pursue this matter farther. A suretyship is merely, in the language of the statute of frauds, " an undertaking for the debt of another," and the defendants' undertaking was nothing else.

One view of the case has been urged upon our consideration, which has indeed something of plausibility about it, and which we have examined with some care, and with a disposition to adopt it, if found applicable to the case. It is, that the release, being given for one object, shall not, in a court of equity, be permitted to operate beyond its primary purpose, and thus produce an end, not in contemplation at the time of its execution. But there seem to us invincible obstacles in the way of applying any such rule of restraint to the operation of this release.

1. This release was intended to remove all interest of Waller in the then pending litigation, and to effect that object by removing, at once, from him all possible prospective liability for any portion of the judgment recovered in that suit. This surely would not have been effected in the mode contemplated, if Jackson, or his heirs, were still liable to contribution. For if so, they must of course have an action against Waller for the amount. And we learn from the

testimony, that this view was suggested, as an answer to the release, and the referees held, that it did remove Waller's interest, upon the ground, doubtless, that the release of Waller from all liability did, by consequence, release the co-sureties from contribution.

2. But if we should regard this release as more extensive than it need be, to accomplish the object of releasing Waller's interest in that suit, it will be difficult to say, there was any mistake or misapprehension of the parties, in regard to its execution. It is just such a paper, as the parties chose to execute; and if it could be shown, that the parties mistook its operation in this suit, or did not have that in mind, it will not make out a case for the interference of a court of equity, to restrain the operation of the contract. For the parties, if they understood the subject matter of their contract, were bound to know, that it must cut off all contribution from co-sureties, to the extent of the release, in order to produce the immediate end in view. A release of Waller from all liability to refund the expense of the then pending litigation would, as we have already suggested, doubtless have removed all interest in Waller. But to have that effect, it must not only have had the effect to release him from all *direct* claim for such expense, but from all *indirect* claim, by means of the co-sureties. And so must any release, to remove Waller's interest, operate, not only upon the direct claim against Waller, but upon all collateral remedies for the same. thing. And this is the view the referees must have taken of the thing, in order to admit Waller.

And in this view of the subject, it is not that the parties have executed a release operating more extensively, than it needed to have operated, or than it was expected to operate, but that probably, either through mistake of the law, or from over caution, and to save all question, and make the matter secure, they saw fit to give Waller a general release " from all liability," when probably a more restricted release might have answered the end equally well. But was it ever known, that parties, having proceeded upon any such ground, could claim to be set back upon their former standing? We think not. One might almost as well expect to be informed, on application to a court of equity, in advance, what kind of release they should execute. The truth is, that parties must act, in such cases, and they expect to act, altogether upon their own responsi-

bility ; and if they release a right of action, in order to get a witness admitted to testify, when no such release was necessary, or give a broader release than was needful, they must abide the consequences; and it would be a novel case for a court of equity, in such case, to restore the party to the rights which he had thus unnecessarily released. If that could be done, the proceeding of releasing a witness would be a safe one !

But those cases, where courts of equity interfere to restrain the operation of releases, are confined within narrow limits and proceed upon principles of well settled law.

1. Courts of equity will restrain a general release to the thing, or things, intended to be released. As, upon a release of all demands, when some particular demand was in view, the court of chancery will not allow the release to take advantage of the general words, to defeat the collection of a demand not then in the minds of the parties. So, too, a court of equity will reform contracts, in all cases, upon the most indubitable evidence, that they were so drawn, as not to express the intention of the parties.

2. Another class of cases, where courts of equity relieve the party from the consequences of his own inadvertence to some extent, is where he is made liable, at law, for a penalty, or where the terms of his contract subject him to loss, in the nature of a forfeiture. In all such cases courts of equity interfere, and, when the damages are clearly subject to estimation, upon the payment of such sum as is full compensation, decree restitution.

3. The case of *Claggett* v. *Salmon*, 5 Gill & Johns. 314, cited from 2 Eq. Dig. 417, decides, that when the creditor releases one of two or more joint and several debtors, not intending to release the debt, a court of equity will restrain the operation of the release. The case, upon examination, I find to be precisely the same case put by Ld. Eldon, in *Boultbee* v. *Stubbs*, 18 Ves. 20,—that is, that of a composition made with the principal, reserving the right to collect the balance of the surety,—which Ld. Eldon justly says is " so very absurd, that it ought to appear plainly,"—and it is no precedent for the present. And it seems to us impossible to find any general principle, established by the past history of equity jurisprudence, which would justify our limiting the operation of this release, in this case, which would not equally justify that interference in all cases,

where we might suppose it more just, if the parties had made a different contract.

4. In form, if any such interference of the court were desired, upon the coming in of the supplemental answer, urging this portion of the defence, the orators should have filed their supplemental bill, stating the grounds upon which they desired to contest the release, so as to have had the matters properly in issue before the court. But that is mere form, and could be reached now, if the merits were in favor of the plaintiffs. *Claggett* v. *Salmon* expressly requires, that the cause for giving a contract of release a restricted operation should be alleged in the bill, and issue joined on that point, in order to justify a decree qualifying its operation. So that in strictness this question did not arise in this case; but as it was important to have it settled, and either now or hereafter it must arise in the case, and it having been fully argued, we have examined it and given the result of that examination. We do not intend to say, that the chancellor will be absolutely precluded from now suffering the question to be raised in form upon the record; but it seems to us, that such a step could not avail the orators.

The result is, that this decree must be reversed, and the case be remanded to the court of chancery, with instructions to that court to dismiss the plaintiffs' bill.

NOTE BY REDFIELD, J. *Wesley* v. *Thomas*, 6 Har. & Johns. 24, is where a court of equity decreed a mortgage to be surrendered to be cancelled, after the debt was paid, for which the mortgage had been given, as collateral security to some one remotely holden. It has no bearing whatever upon the question involved in the present case. The case of *Claggett* v. *Salmon* has been already stated. It was decided upon the authority of the English cases, allowing the creditor to compound with the principal, reserving the right to collect the balance of the surety, and although most absurd, as Ld. ELDON says, is there regarded as law; and it comes nearer the present case, than any other I have seen. But it is, in fact, an authority against the plaintiffs. In that case the plaintiffs made an express reservation of the right to go against the surety for the balance,— and which Ld. ELDON says must appear very plainly, or it will not be allowed,— while in the present case there is no such reservation, either express, or implied; and if there had been, it would have defeated the very purpose of giving the release, that is, removing the interest of Waller. The case of *Kirby et ux.* v. *Taylor et al.*, 6 Johns. Ch. R. 242, is the case of settling the guardianship account with one of the guardians, as to his share, expressly excepting the other two guardians;

Fletcher et al. *v.* Jackson et al.

and the court held, that the release should not operate in favor of the guardians not intended to be released. *Reigal* v. *Wood*, 1 Johns. Ch. R. 402, is where the court set aside securities obtained by fraud. *Wiser* v. *Blachly*, 1 Johns. Ch. R. 607, is the common case of reforming a deed, or contract, to correct a mistake. *Boyd* v. *Dunlap*, 1 Johns. Ch. R. 482, is the common case of allowing a deed to stand as security for the valid portion of the sum included in the condition, —one portion being clearly against good conscience. In the case of *Owen* v. *Homan*, 15 Jurist 339, Am. Ed. vol. 3, p. 112, before the Lord Chancellor so late as February, 1851, it seems to be considered, that any contract between the creditor and principal debtor, by which the contract is substantially varied, although with the express stipulation, that the surety shall remain liable, is wholly inadmissible.