JOSHUA WAGENSELLER ET AL.

V

BENJAMIN S. PRETTYMAN ET AL.

</div>

1. SURETY—CONTRIBUTION—EXPENSE OF DEFENDING A SUIT.—A surety may recover contribution from his co-surety for costs and expenses in defending a suit against him for the debt, if the defense was made under such circumstances as to be regarded as prudent.

2. ENFORCING A TRUST—CREDITS TO TRUSTEE.—This was a bill in equity seeking to enforce a trust, and for a division of the proceeds of the trust property alleged to be in the hands of the trustee. The court erred in charging the trustee with the whole amount for which the trust property was sold, without deducting the amount paid out by the trustee to procure the title to the trust property. The court further finds that the allegations in the bill are not supported by the proof.

APPEAL from the Circuit Court of Tazewell county; the

Wagenseller v. Prettyman.

IIon. N. M. Laws, Judge, presiding.. Opinion filed September 17, 1880.

Mr. J. W. Dougherty, for appellants; that the doctrine of subrogation in equity is confined to the relation of principal and surety, and to cases where a junior lien-holder has been compelled to remove a superior lien, cited Bishop v. O'Conner, 69 Ill. 431.

Messrs. Prettyman & Sons, for appellees; that in contracts against liability the party need not wait till he has actually paid damages, but his right of action is complete when he becomes legally liable to pay them, cited Chase v. Hinman, 8 Wend. 452; Wells v. Pond, 19 Wend. 423; Sedgewick on Damages, 311; McGraw v. Powers, 4 Abb. Pr. 8.

The mode of payment by the surety is immaterial. It is sufficient if the original indebtedness is satisfied. The benefit is the same to the principal debtor, and the obligation to refund the same: Ralston v. Wood, 15 Ill. 159; Smalley v. Edey, 19 Ill. 207; Hitt v. Sharer, 34 Ill. 9.

Exceptions to a master's report filed after a final decree has been rendered, are no part of the record, and can not now be heard or considered by this court: Pennell v. Ins. Co. 73 Ill. 303; Hurd v. Goodrich, 59 Ill. 450; Reigard v. McNeil, 38 Ill. 400; Prince v. Cutler, 69 Ill. 267.

The action must be for all jointly or each severally: St. L. & A. R. R. Co. v. Coulter, 33 Ill. 188.

Per Curiam. In 1871, and for some years prior thereto, one C. J. D. Rupert was the owner of a distillery in Pekin, and the parties to, or represented in this suit, were his sureties to the Government of the United States on several distillery bonds executed by them, from time to time, under the revenue laws.

For non-payment of government taxes, the distillery was seized and sold to Gideon H. Rupert by the revenue officers, for the sum of twenty-two hundred dollars, subject to redemp-

tion, and a certificate of purchase executed and delivered to the purchaser therefor.

The property was thought to be worth more than the amount for which it had been sold, and by an arrangement with C. J. D. Rupert and his sureties, the same was conveyed by him to Hippen, one of the securities on the bonds; and thereupon, Gideon H. Rupert, the purchaser (who was also one of the sureties on the part of said bonds) executed to Hippen a certificate of redemption from the collector's sale, and Hippen conveyed the premises in fee to the said Gideon H. Rupert, who immediately and in pursuance of the arrangement of the parties, executed to the sureties of C. J. D. Rupert on said bonds an agreement in writing, reciting the facts aforesaid, and that he had become the purchaser of the premises for the use and benefit of each and all of said sureties on said bonds, and agreeing as follows:

" Now therefore, in consideration of the premises and of the mutual liability of all of said sureties on said bonds, I hereby agree to hold said property for the mutual benefit of said sureties, and to sell, lease, or dispose of the same for the mutual security and benefit of said sureties and each and all of them, and to save and keep harmless said sureties and each of them, to the extent and amount of the net proceeds and value of said property, from all liability that may arise or has arisen by reason of any claim or prosecution on said bonds aforesaid, to the extent and amount of said property aforesaid.

" Witness my hand and seal, this 30th day of June, A. D. 1871.

"G. H. RUPERT.

" And further, in consideration of the redemption of the above described lands from the sale above named, by H. W. Hippen from me, and of his conveyance thereof to me, I hereby agree to hold and dispose of said land as redeemed and conveyed to me in trust for said sureties, and each of them, as is above stated.

" Witness my hand and seal, this 30th day of June, A. D. 1871.

"G. H RUPERT."

The bill charges that on the 11th day of July, 1871, the said Gideon H. Rupert, sold and conveyed the undivided half of said premises to one John D. McIntire, for nine thousand dollars, and loaned the proceeds of said sale at eight per cent. interest, which interest has been regularly collected by Rupert during his life-time, and by his executors since his decease, and that the interest thus collected, together with the principal, amounts to the sum of eighteen thousand dollars: and that at the time of said sale, said Gideon H. Rupert leased the other half of said property to said McIntire, and collected the rents therefrom, amounting to one thousand dollars per year, until the 16th day of February, 1877, when he died, leaving a last will and testament appointing said Joshua Wagenseller and Asa H. Danforth his executors, with full power to sell and dispose of his estate.

That said executors continued to collect said rent from said McIntire until the——day of————-1877, when they sold said undivided half of said premises to McIntire for five thousand dollars, and that the rents collected by the executors amounted to six thousand dollars.

That all of said moneys are still in the hands of said executors, in trust, for the use of said sureties on said bonds. Also charges that suits were brought and judgment rendered on said bonds, for large sums, of which Gideon H. Rupert in his life-time paid twelve thousand dollars, and Prettyman three thousand five hundred, and that Prettyman also paid out one thousand dollars in defending said suits, which was for the benefit of all the sureties in the bonds.

Claims that there is in the hands of the executors the sum of twenty-five thousand dollars, rightfully belonging to said sureties, and prays that the executors be decreed to pay to complainants and other securities, the money so advanced and paid by them.

The executors answer the bill, denying most of the material allegations of the same; they expressly deny that the nine thousand dollars, or any part thereof, was ever paid by McIntire to Rupert in his life-time, or to them since his death.

Admit that they sold one-half of the property for five-thou-

sand dollars, but deny the payment thereof, except one thousand dollars.

The court, by its decree, charged the executors with nine thousand dollars, and interest thereon at eight per cent. per annum from July 11, 1871, for the undivided half of the distillery property, sold by Gideon H. Rupert, in his life-time, to McIntire, and with five thousand dollars and ten per cent. interest thereon from the 15th day of June, 1878, for the undivided half sold by the executors to McIntire, making in all, including interest, $20,759.15.

The decree also finds that Gideon H. Rupert had paid to the United States as one of the sureties on said distillery bonds, $13,101.61, and that Prettyman had paid, for expenses in defending suits brought on the bonds, $1,000, and also by the sale of his property, on a judgment rendered on one of the bonds, $3,500.

To these sums so paid by Rupert and Prettyman, interest was added, and a decree rendered requiring the executors to pay to Prettyman the sum of $4,795.24.

The government of the United States recovered judgment against Prettyman and others, as the sureties of C. J. D. Rupert on his distillery bonds, and the land of Prettyman was sold by the marshal on an execution issued on one of these judgments, and purchased by the plaintiff in execution for $3,500.

Appellants now insist that Prettyman had no title to the premises so sold, and that the court below erred in allowing him a credit against his co-sureties for the amount of such sale.

We find no evidence in the record to show that Prettyman was not the owner of some interest in the land subject to sale on execution.

The land was levied upon and sold as Prettyman's property, and whatever interest he had in it passed to the purchaser, and so long as the purchaser makes no complaint of want of title, none can be heard from others.

The liability of the co-sureties of Prettyman to the govern-

ment was lessened to the extent of the bid, and the result is the same to them as if Prettyman had paid the money.

It is next insisted that the court erred in allowing Prettyman $1,000 for money expended by him in defending the suits brought in the Federal court against the sureties on C. J. D. Rupert's distillery bond.

A surety may recover contribution from his co-surety for the costs and expenses of defending a suit against him for the debt, if the defense was made under such circumstances as to be regarded as prudent. Brandt on Suretyship, Sec. 274; Fletcher v. Jackson, 23 Vt. 581; Marsh, adm'r, v. Harrington, 18 Vt. 150; American notes to Deering v. Winchelsea; White and Tudor's Leading Cases in Equity.

The evidence in this case leaves no doubt that it was prudent and for the interest of the sureties that said causes should be defended; and as the proof shows that Prettyman actually paid out in the defense of said suits the amount allowed him by the decree, we think the court committed no error in allowing the same.

A careful examination of the evidence leaves no doubt that G. H. Rupert advanced the money paid to the United States at the time of the sale to procure the title to the distillery property, and that no other money was paid by any of the parties for that purpose.

The agreement of the trustees was to account for the net proceeds of the trust property, and as he advanced the $2,000 to procure the title to the property in the first instance, the same should have been allowed to his executors, with interest thereon.

We think the court erred in charging appellants with the whole amount for which the property was sold, without deducting therefrom the $2,000 paid by the trustees to procure the title to the trust property.

As this case must be remanded for further proceedings, we think it proper to say that there is an entire want of evidence in the record to support the case made by the bill.

The bill charges that the distillery property was sold for cash, and that the money is in the hands of the executors as a

trust fund, and asks to have the same applied to the purposes of the trust.    These allegations are denied by the answer.

There is no proof in the record, either by deposition, by certificate, by the master's report, or by recitals or findings of the decree, tending to sustain these allegations of the bill.    On the contrary, McIntire, the purchaser, and the only witness upon this point, testifies that with the exception of $1,000 paid down, notes were given for the property, and except a portion of the interest, they have not been paid.    What has become of these notes, or why they have not been collected does not appear.

If they are still in the hands of the executor, and McIntire is solvent, no reason is perceived why they should not be collected, either by the executor or a receiver to be appointed for that purpose, and the proceeds applied as required by the terms of the trust.

If it is contended that G. H. Rupert was guilty of a breach of trust, and thereby rendered himself liable for the full value of the trust property, then the bill should set out the particular acts or omissions of duty relied upon to charge him, so that an issue could be formed and the evidence taken with reference thereto.

No such issue has been made by the pleadings or tried by the court in this cause.

The allegations and proof must correspond, and a complainant will not be entitled to relief, although the evidence may establish a clear case in his favor, unless there are averments in the bill to support the case made by the proof.    Heath v. Hall et al. 60 Ill. 344.

The decree is reversed and the cause remanded.

Reversed and remanded.