## ARRINGTON *vs.* PORTER.

[ACTION TO RECOVER DAMAGES FOR FAILURE TO DELIVER COTTON.]

1. *Statute of frauds ; what contract not within.*—A parol contract for the rescission of a sale of land, the purchase-money not having been paid, accompanied by a return of the possession to the vendor, is without the statute of frauds.

2. *Decree against principal ; when not evidence against surety.*—A decree o the chancery court foreclosing a mortgage of land is not evidence against the surety of a debtor, who was not a party, in a suit at law to recover the balance of the purchase-money, to prove that the sale had not been rescinded by the parties.

APPEAL from the City Court of Montgomery.
Tried before Hon. JOHN D. CUNNINGHAM.

On the 10th day of December, 1866, appellant sold Thos. R. Stacey a plantation in Montgomery county. Stacey, with one V. R. Porter, in payment of said plantation, executed three written instruments, of like tenor with the one below, with the exception of the dates, and secured these obligations by a mortgage on the land, which Arrington had conveyed to him in fee simple.

The written instrument upon which this suit was brought was as follows :

"Montgomery, Ala., Dec. 10th, 1866.

"On the 15th day of November, 1868, we or either of us promise to pay and deliver to A. H. Arrington, or order,

in the city of Montgomery, thirty-three and one-third
bales of cotton, each bale to weigh five hundred pounds,
to be in good order, and of the class known as middlings.

"THOS. R. STACEY,

"V. R. PORTER."

Stacey was duly adjudicated a bankrupt in May, 1868,
and received a discharge. On the 8th of January, 1869,
no part of said cotton having been delivered, appellant
brought this action against the appellee to recover dam-
ages. The plaintiff introduced the written instruments in
evidence, and proved the price of middling cotton, and
then rested.

The defendant then introduced Thos. R. Stacey, who tes-
tified that he as principal, and the defendant as surety, ex-
ecuted said written instrument; that the consideration
thereof was a tract of land lying in Montgomery county,
which was purchased by the said Stacey from plaintiff, and
conveyed to Stacey by the plaintiff, by an absolute war-
ranty deed, on the 10th day of December, 1866, the date
of said instruments; that he (Stacey) at the same time
executed a mortgage to secure the payment of said instru-
ment, and two like instruments, due respectively on the
15th of November, 1867, and the 15th of November, 1869;
that he went into possession of the land conveyed, and
cultivated it during the year 1867, making about thirty
bales of cotton and sixteen hundred bushels of corn; that
between the 15th and 18th day of December, 1867, witness
met plaintiff; that plaintiff asked witness if he would be
able to make the first payment; that witness said he would
not; that plaintiff then proposed to rescind the said con-
tract and take the land back; that witness agreed to this
proposition, and as the papers, except the deed to Stacey,
were in the city of Montgomery, they agreed to exchange
papers when they met in the city of Montgomery; that
witness agreed to pay the plaintiff a reasonable rent, but
that no time was fixed for the payment thereof, nor was
the amount fixed or agreed on; that witness told plaintiff
that he could pay part of said rent in corn, which plaintiff
said would suit him; that witness agreed to surrender to

plaintiff possession of the plantation, but plaintiff agreed that witness might remain in the houses till he could get another place, which occurred a few days afterwards, when witness moved out. In a day or two after this agreement was made, the plaintiff called upon the defendant (who had possession of it) for the deed which plaintiff had executed to witness, which was sent to him and received by him, and in a few days, and before plaintiff left the neighborhood, plaintiff rented out said plantation to other persons for the year 1868, who occupied and cultivated it during that year.

The defendant testified that plaintiff came to his house some time in December, 1867, and asked for the deed he (plaintiff) had executed to T. R. Stacey, saying he had rescinded the trade with Stacey; that he (defendant) looked for the deed, but could not find it at that time, but on the next morning found it and sent it to plaintiff; that he was not present when the agreement to rescind was made, and knew nothing of it till plaintiff called for the deed; that he afterwards met plaintiff in the city of Montgomery, and that plaintiff asked him for a draft on Lehman, Durr & Co. for the rent of the land, but he refused, telling plaintiff he had no funds, and had rented no land from him.

Two other witnesses testified in substance that they saw plaintiff in 1867, on his arrival in Montgomery from North Carolina, before he saw Stacey, and plaintiff was then trying to find some one to rent the land to, as he said he expected to have to take the land back, and that in 1867 plaintiff did rent out said land for the year 1868.

On behalf of the plaintiff there was testimony to show that the rescission of the contract for the sale of the land was to be dependent upon Stacey and Porter paying a certain portion of the crop raised that year on the land, and that this was not done. The plaintiff himself testified that he got the deed to the land, so as to prepare a reconveyance from Stacey and wife to the land, in case Stacey complied with the terms upon which the land was to be taken back; that he applied for the deed only to enable

him to draw up the new deed for Stacey and wife to sign. The bill of exceptions then recites:

"At this stage of the evidence the plaintiff offered in evidence a duly certified transcript of a bill filed on the 22d of June, 1868, by the plaintiff against Thomas R. Stacey, (the principal of defendant, Porter,) to enforce said mortgage, and of the summons issued on said bill against said Stacey, and of the service of said summons on said Stacey in July 1868, as duly returned on said summons, and of the decree *pro confesso* and decrees and reports in said chancery suit; which transcript is marked and referred to as 'Exhibit C,' and is hereby made part of this bill of exceptions."

It was admitted by the defendant, and Stacey testified that the summons issued under said bill in chancery was duly served on him in July, 1868. The defendant objected to the evidence of the said bill in chancery, and the said proceedings thereon, on the ground that the same were irrelevant. The court sustained this objection, and the plaintiff excepted to this ruling and decision of the court.

The decree of foreclosure referred to was rendered upon decree *pro confesso* against Stacey, and the suit in which it was rendered was commenced July 7th, 1868.

This being the substance of the evidence, the court charged the jury as follows:

"If A convey land to B by deed, and at the same time, in order to secure the purchase-money, takes the agreement of B and D to deliver cotton to him, and also a mortgage from.B to secure the delivery of the cotton on the same land, and at the same time and after the law day of the mortgage agree with B to rescind the contract of sale, and they do rescind it by agreement, it is not necessary that the agreement to rescind should be in writing in order to discharge the surety, unless that was a portion of the agreement to rescind."

To the whole of this charge and each several part thereof the plaintiff excepted.

The court then, at the request of the defendant, gave the following charge, to which plaintiff excepted :

" If the jury believe, from the evidence, that the instrument in writing described in the complaint was executed by Thomas R. Stacey, and the defendant as surety for said Stacey, in consideration of the purchase of a plantation by said Stacey from the plaintiff, in 1866, at the time of said purchase plaintiff executed to said Stacey a deed to said plantation, and the said Stacey at the same time executed to said plaintiff a mortgage to said plantation to secure the payment of the cotton agreed to be delivered, and that afterwards, in December, 1867, plaintiff and said Stacey agreed to rescind said contract for the purchase of said plantation, and to consider said contract as then rescinded, the papers to be afterwards exchanged, and Stacey to pay rent for the year 1867, the amount of said rent to be afterwards determined, in pursuance thereof said Arrington did procure said deed to said land, and said deed was received and accepted by him, and said Stacey delivered the possession of said plantation to plaintiff, and that plaintiff retained possession of the same by leasing it to other persons for the year 1868, then they must find for the defendant."

The charges excepted to and the action of the court in excluding the record of the chancery suit, are now assigned for error.

SAMUEL F. RICE and THOS. M. ARRINGTON, for appellant. An important question in this case is, whether, in a court of law, a mere verbal rescission of a sale of land previously made honestly and fairly, and perfected by acceptance of a regular conveyance, and of possession on the part of the vendee, in Alabama, can be treated as valid. If this question is decided in the negative, the defense which was successful in the court below, fails entirely, and there must be a reversal of the judgment of that court.

That this question must be decided in the negative, seems to be settled by adjudged cases upon reasoning which admits of no refutation.—*Clark v. Graham,*

6 Wheat. 577; *Keeler v. Tatnall,* 3 Zabriskie's Rep. 62; *White v. White,* 1 Harrison's Law (N. J.) Rep. 202; *Hughes v. Moore,* 7 Cranch, 176; *Quincey v. Tilton,* 5 Greenl. Rep. 277; *Gleason v. Drew,* 9 Greenl. Rep. 81, 82; *Miller v. Smyth,* 1 Mason's Rep. 175; *Tripp v. Tripp,* Rice's Rep. 84; *Chapman v. Searle,* 3 Pick. Rep. 38.

"A court of law can look only to the legal title" where real estate is concerned; "the legal title to lands can not pass by parol in this State"; nor "by a parol estoppel." This is the inevitable result of the policy of our statute of frauds.—*Doe, ex dem. McPherson v. Walters,* 16 Ala. 714; *Cawsey v. Driver,* 13 Ala. 818; *You v. Flinn,* 34 Ala. 409; *Hughes v. Moore* and *Clark v. Graham, supra.*

By our statute of frauds, (Revised Code, § 1862,) every agreement, the legal effect of which, if valid, would be to change or transfer either the legal or equitable title to land from one person to another, is void, unless it, or some note or memorandum thereof, expressing the consideration, "is in writing and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing," "unless the purchase-money or a portion thereof be paid, and the purchaser be put in possession of the land by the seller." And if there be no such writing as is required by this statute, then, although the purchase-money be paid and the purchaser put in possession of the land by the seller, a court of law must treat the contract as so far void, that it can not enforce the contract or any right of the purchaser thereunder. The purchaser in such case can get relief only in a court of equity, where he will get it, but only upon equitable terms and conditions.—*Chapman v. Glassell,* 13 Ala. 50; *Hughes v. Moore, supra.*

The legal requisites of a perfect sale or exchange of land are set forth in the statute of frauds.—*Clark v. Graham, supra.* And "when the sale or exchange is fairly and honestly made and perfected by delivery, the property is completely changed in the land which is the subject of the sale or exchange; and if, after this, the parties agree to give up the bargain, as it is often expressed, and place

things as they stood before it was made, this object can only be effected by what, in legal contemplation, amounts to a re-sale or re-exchange ; and whatever was necessary constitute the original sale or exchange a legal transfer of the property from one of the parties to the other, is equally necessary to constitute a legal re-sale or re-exchange." *Quincey v. Tilton, supra*, and other cases cited above.

Even the cancellation or re-delivery of a deed for land, by the vendee who had accepted it and taken and held possession under it, (such possession being equivalent in law to · recording the deed, so far as notice is concerned,) does not divest the title of the vendee or revest the title in the vendor.—*Mallory v. Stodder*, 6 Ala. 808, and the cases from Massachusetts and Connecticut Reports therein cited.

2. An agreement to rescind is very different from a rescission. The mere agreement to rescind is, in its nature, executory ; whilst a rescission, in its nature, is executed. No such mere agreement as to land, so long as it retains to any extent its executory nature, can be the basis of a defense to a suit for the price agreed to be paid for the land on its original sale.—*White v. White*, 1 Harrison's (N. J.) Law Rep. 202; *McNair v. Cooper*, 4 Ala. 660, (which illustrates the difference in the effect of an executed and an executory agreement.)

The agreement to rescind, relied on in the present case as a defense, was not executed.

3. A third answer to the defense set up below, is found in the proceedings in the chancery suit read in evidence and shown in the record. Full opportunity was afforded for the interposition of the pretended rescission as a defense in that chancery suit. That was the suit in which that kind of defense should have been made. If that defense was good anywhere, it was good in that suit. It was not made there, and it can not be allowed here.

There is nothing in the fact that Porter was the surety of the original purchaser. There are defenses peculiar to sureties. But the alleged rescission of a sale of lands is not one of those defenses. A surety has no right to ask a court to disregard the statute of frauds, or the law of the

land, in deciding what amounts to a rescission of such sale. Besides, Porter, the surety, had notice of all the facts, and has not been, and can not be, prejudiced, or deprived of any benefit he otherwise would have had, by any act of the plaintiff. And it is clear, the plaintiff has done nothing but what he lawfully might do. Certainly the lawful acts of the plaintiff can not deprive him of his right to recover judgment for what is lawfully due to him from Porter, as well as from Porter's principal.

STONE, CLOPTON & CLANTON, *contra.*

B. F. SAFFOLD, J.—The material question at issue in this case is, whether a verbal contract rescinding a sale of land, the purchase-money not having been paid, executed by the vendor receiving possession of the land and using it as his own, is within the statute of frauds.

The rescission of a sale of land which has been completed, is virtually a sale of the land by the vendee to the vendor. Possession by the purchaser with the consent of the vendor, under a parol contract of sale, takes the case out of the statute of frauds, but the possession must be under the contract.—*Danforth v. Laney*, 28 Ala. 274. A purchaser who has paid the purchase-money, and has obtained possession under a parol contract, is entitled to a specific execution of the contract.—*Brewer v. Brewer & Logan*, 19 Ala. 481. If the proof establishes that Arrington received possession of the land with the consent of Stacey, under a parol contract rescinding the former sale, the purchase-money not having been paid by Stacey, then there was only needed the proper conveyance to complete the sale. This, either party could enforce. The purchase-money was virtually paid, and the debt sued for in this case was extinguished.

It was not stated with what view the plaintiff, Arrington, offered in evidence the record of his chancery suit against Stacey. We presume it was intended to show an adjudication of the question whether there had been a rescission of their contract. Porter was not a party to that suit, and

the decree was *pro. confesso.* Stacey had become bankrupt, and was doubtless indifferent to the result of the chancery proceeding. It sought only to appropriate the land to the payment of the debt, and that had already been done. In some instances, a judgment against the principal is made conclusive upon his sureties by statute, as in the cases of *Williamson v. Howell,* 4 Ala. 693, and *McClure v. Colclough,* 5 Ala. 65. The general rule, however, is, that a recovery against the principal can not be used as evidence to charge the surety, unless his contract binds him to the result of legal proceedings against his principal. When the judgment is binding on the surety at all, it is conclusive. He is either a party, or privy, or a stranger.—*Fireman's Ins. Co. v. McMillan,* 29 Ala. 147. There was no error in excluding the record of the chancery suit.

There is no error in the action of the court to which the appellant has a right to object.

The judgment is affirmed.