## Dudley *v.* Hayward and others.

*(Circuit Court, D. New Hampshire. April 10, 1882.)*

**1. CONTRACT—SPECIFIC PERFORMANCE—UNREASONABLE DELAY.**

Defendants entered into a verbal agreement to sell certain land and buildings to a husband and wife, the deed to be made to a third party. The terms were $1,000 cash, and $500 a year for five years, to be secured by note and mortgage. The $1,000 was paid. The note was given by the husband and wife, but the mortgage was never executed by the plaintiff, and the papers, therefore, were not passed. When the first instalment became due, one year after the purchasers entered into possession, demand was made upon them for the $500 and interest, and in default of payment they were ejected from the premises. After the expiration of five years, and after the maturity of the last instalment on the note, plaintiff brings a bill in equity to enforce a specific performance of defendants' agreement. *Held,* that where plaintiff does not aver that he has from time to time tendered the instalments, or that he has tendered performance at all, or that he even offers to pay the money and interest, but only that he is and always has been ready to perform his part of the contract, a delay of five years, unexplained, is unreasonable and will defeat the bill.

**2. SAME—RECOVERY OF PURCHASE MONEY.**

Under such circumstances, and where the seller had elected to rescind the contract, the purchaser may recover back so much of the purchase money as he has paid, and for this purpose the verbal contract may be proved; but if he refuses to perform his part he can recover back nothing. And where neither party demanded, and of course neither refused, to have the bargain completed, *held,* that the whole of the purchase money paid, less a reasonable rent for the time the premises were occupied, should be awarded to the purchaser.

In Equity.

*D. B. Gove & Sons,* for plaintiff.

*Batchelder & Faulkner,* for defendants.

LOWELL, C. J. This bill is brought to enforce the specific performance of an agreement to convey the Mead Hotel, so called, in Chesterfield, New Hampshire, or for damages or other relief. There is little dispute about the facts:

In May or June, 1874, the defendants Hayward and Sherman made a verbal agreement to sell the land and buildings to Persis M. Thompson, wife of Romanzo Thompson, who, for reasons of her own, stipulated that the deed should be made to her brother, Mr. Dudley, of Stockton, California, the plaintiff. The price was $3,500, namely, cash, $1,000, and $500 a year for five years, with interest, and some charges afterwards added by agreement. These payments were to be secured by note and mortgage. The contract was to be considered as made April 1, 1874. The $1,000 was paid July 7, 1874, and a receipt was given for it by the defendants, which is admitted not to be a sufficient memorandum to comply with the statute of frauds, though it does show some part of the contract. The letters which the plaintiff relies on do not refer to the memorandum or to the contract, and are not explicit enough to supply the defect. Mr. and Mrs. Thompson were put into possession of the property and kept the hotel until April, 1875. In the mean time Mr. Lane, of Keene, whom each party calls the attorney of the other, and who would seem to have been consulted by both jointly, prepared the deeds and sent one —the mortgage—to Dudley, with a note to be signed by him; but he returned the papers unexecuted, saying that he would be willing to sign a mortgage to secure Mrs. Thompson's note. Accordingly, a note was signed by her and her husband, dated April 1, 1874, as agreed, and put into Mr. Lane's hands, and it is now produced by the defendants, to whom Mr. Lane gave it at some time not stated in the evidence.

The mortgage was sent to Dudley in October, 1874, but he never signed or returned it, or answered the letter of Mr. Lane which enclosed it.

The papers, therefore, were not passed.

April 1, 1875, an instalment of the purchase money of $528 was due, and the defendant Hayward testifies that he demanded payment of it, and that Mr. and Mrs. Thompson replied that they were expecting the mortgage from Dudley, and would then pay and take the deed. The defendants thereupon notified Mr. and Mrs. Thompson to quit the premises in 10 days, and on their failing to do so forcibly ejected them April 17, 1875. Beyond this time the evidence does not go, except that the Thompsons have always complained of this conduct, and have brought some actions at law concerning it.

In March, 1876, the defendants Hayward and Sherman sold the land to the defendant Thatcher, who had some general knowledge of the dealings between the parties, as all the neighbors had, but how definite I do not know. The evidence upon this point is conflicting.

The defendants Sherman and Hayward, in their answer, after stating the verbal contract, insist that it is within the statute of frauds; they rely also on the failure of the plaintiffs to furnish the mortgage and pay the instalment, and on the lapse of time. The plaintiffs, on the other hand, declare that the defendants Hayward and Sherman were to procure the execution of the mortgage, as well as of their own deed, and that the delay was attributable to their own neglect.

Thatcher answers that he is a *bona fide* purchaser without notice.

According to a considerable preponderance of authority, payment of part of the purchase money, coupled with possession of the house

and land voluntarily given and received in pursuance of the contract, are a part performance, which will authorize a court of equity to admit the oral evidence. Browne, St. Fr. § 463 *et seq.*; 4 Kent, Comm. 451; Story, Eq. § 761; *Earl of Aylesford's Case,* 2 Str. 783; *Ungly* v. *Ungly,* 4 Ch. D. 73; S. C. 5 Ch. D. 887; *Purcell* v. *Miner,* 4 Wall. 513, 518, per *Suer, Jr.; Eaton* v. *Whittaker,* 18 Conn. 222; *Armington* v. *Porter,* 47 Ala. 714; *Tatum* v. *Brooker,* 51 Mo. 148; *Pindall* v. *Trevor,* 30 Ark. 249. I shall not have occasion to examine this point narrowly, as my decision will not depend upon the statute of frauds.

Up to April 6, 1875, the contract was a valid and subsisting one, and the defendants demanded payment in accordance with its terms. By their notice to quit on that day they rescinded it. *Ayer* v. *Hawkes,* 11 N. H. 148. I suppose they had the right to rescind, if Mr. and Mrs. Thompson, who were the equitable owners of the property and agents of the plaintiff, neglected to produce the mortgage and to pay an instalment for which their note had been given. The Thompsons always maintained, and do in their bill and evidence maintain, that the defendants were to procure the due execution of the mortgage. But it is incredible that the defendants undertook to cause the plaintiff to execute his own mortgage. Mr. Lane was the attorney of the defendants for some purposes, and of the Thompsons for certain others, and the Thompsons should have taken care that their brother's mortgage was forthcoming. On the other hand, the Thompsons did not reject or rescind the contract. They did not even refuse, but only neglected, to perform it. They were under a strong pecuniary pledge to perform, and their neglect arose, I suppose, from an unwillingness to pay more money until the title was passed, coupled with the mistaken opinion that it was the duty of the defendants to procure the execution of the mortgage.

The neglect may have authorized a rescission, in strict law; but what, in that case, was the proper mode of rescinding? The defendants should undoubtedly have tendered a deed to Mrs. Thompson, as the authorized agent of her brother, and have demanded the mortgage. *Bank of Columbia* v. *Hagner,* 1 Pet. 455; *Taylor* v. *Longworth,* 14 Pet. 172. Instead of doing this, they simply refused to give time, and served a notice to quit at the earliest practicable moment. Time not being vital to this contract, a court of equity, if applied to at once, would have reinstated the plaintiff on proper

terms. *Taylor* v. *Longworth*, 14 Pet. 172. He has not acquiesced in the rescission by any positive act, but he has waited until the estate has changed hands, and until values may be assumed to have changed; and even now, after the time for paying the last instalment has expired, he does not aver that he has from time to time tendered the instalments, or that he has tendered performance at all, or that he even offers to pay the money and interest, but only that he is and always has been ready to perform his part of the contract. Under these circumstances, a delay of five years, unexplained, is unreasonable. *Fuller* v. *Hovey*, 2 Allen, 324; *Pickering* v. *Pickering*, 38 N. H. 400; *Watson* v. *Reid*, 2 Russ. & M. 236; *Alley* v. *Deschamps*, 13 Ves. 225; Story, Eq. § 726; Pomeroy, Spec. Perf. § 405 *et seq.*

The plaintiff may, however, recover back a part of his purchase money. If the seller refuses to carry out a contract for the sale of land as it was made, the buyer can recover back the deposit, or so much of the purchase money as he has paid. For this purpose the verbal contract may be proved, though the statute of frauds might prevent an action being brought upon it. *Gillet* v. *Maynard*, 5 Johns. 85; *Cook* v. *Doggett*, 2 Allen, 439; *Moeser* v. *Wisker*, L. R. 6 C. P. 120; *Williams* v. *Bemis*, 108 Mass. 91; *Dix* v. *Marcy*, 116 Mass. 416; *Parker* v. *Tainter*, 123 Mass. 185; *Cooper* v. *Brown*, 2 McLean, 495. On the other hand, if the buyer refuses to perform his part, he can recover back nothing. *Congdon* v. *Perry*, 13 Gray, 3; *Lane* v. *Shackford*, 5 N. H. 130; *Utterbach* v. *Binns*, 1 McLean, 242. Both rules are just, and depend upon the principle that no one shall reap advantage from his own wrong. Here neither party demanded and of course neither party refused to have the bargain completed. One demanded payment as if the contract were in force, and refused to give the indulgence asked for by the other.

The defendants Hayward and Sherman were in fault in not giving the Thompsons an opportunity to accept a deed and give a mortgage, and the Thompsons were in fault in not procuring the mortgage with more diligence, and in not paying that part of their note which came due April 1, 1875.

In such a case Mr. Justice Washington decreed a repayment of all that had been paid. *Castor* v. *Mitchel*, 4 Wash. C. C. 191. But there the seller had rescinded by conveying to one of two joint purchasers to the exclusion of the other, receiving the whole purchase money, and had lost nothing. Here the Thompsons should pay a reasonable rent for the season of 1874, to be deducted from the $1,000.

I have estimated the amount due the plaintiff at $800, but as the evidence upon this point is not complete, either party may, within 30 days, ask a reference to a master.

Decree for the complainant.

See *Brown* v. *Slee*, notes of cases, *post*.