Rumsey, J.
The defendant is executor of John Walker, deceased. Early in March, 1868, Harvey Walker, the son of testator, had contracted to sell to the plaintiff a farm of over one hundred and twenty-one acres of land owned by Harvey, at the price of $80 per acre. The purchase was to be completed on the first day of April, 1868. Ho thing was done by either
party by way of performing the contract after it was signed. The contract was not under seal. Shortly after it was made, Harvey Walker became dissatisfied with it, and desired his father, the testator, to procure the plaintiff to surrender it. The testator thereupon, before the day for performing the contract, went to the house of the plaintiff for that purpose. What occurred there is found by the referee as follows:—
“ The plaintiff having in his hand the contract, said, to the testator, £ I think I have quite an interest in this *342 contract and should have about $20 per acre, and upon condition of receiving said amount, will surrender it and to this the deceased made answer that he ‘ would pay him that amount in his lifetime or it should be paid out of his estate when he died.’ Upon this being said, the plaintiff delivered over to the deceased the said contract and he put it in his pocket.”
No writing was made in regard to the matter by either party. Nothing was ever done by plaintiff upon his contract of purchase. No payment was ever made by testator to plaintiff, and, after the death of John Walker, plaintiff made the claim for the sum agreed to be paid. It was referred under the statute, and the referee made his report in favor of the defendant. The plaintiff now moves for a new trial.
It is quite clear from the facts found by the referee, and from the evidence, that the intention of. the plaintiff and John Walker, in the transaction they had, was to abandon and rescind the contract-made by Proctor and Harvey Walker, and that John Walker had the authority of his son for making" the rescission. The contract for the sale of the'land was in writing, and was required to be in writing by the statute of frauds.,
The first question in this case is whether this written contract, which is within the statute of frauds, can be abandoned or wholly rescinded by a subsequent oral agreement. The learned referee thought that it could not, and for that reason ordered judgment for the defendant. The question is a very difficult one, and the dicta and decisions upon it are numerous and conflicting ; but among them all I have been surprised to see that it has not even been mootéd in' this State.
It cannot be disputed that a contract in writing, not within the statute of frauds, may be waived, dissolved or annulled by a subsequent parol agreement1 *343 (Goss v. Lord Nugent, 5 Barn. & Ad. 58, 65 ; Cummings v. Arnold, 3 Met. 486). But when the prior contract is of a kind which the statute of frauds requires to be in writing, is an oral rescission valid \
The statute of frauds regulates the manner of making contracts with regard to the proof of them; it requires that the contract for the sale of the lands should be in writing and subscribed by the party by whom the sale was made. The statute avoids all contracts for that purpose which are not made as it prescribes. And, after it is made, it can only be proved by the writing ; and all the terms must be contained in the writing itself. It does not permit new specifications to be added by parol to the written paper. It is rigorous in its requirements that the written paper shall contain the whole contract as made. But the statute goes no further than this. It does not attempt to control the performance of the contract, nor to prescribe the manner of its dissolution or of its abandonment. Such things are not necessary to the attainment of its object. That was, that parties should not have burdensome contracts, which they never made, imposed upon them, and that the terms of those contracts should not depend upon the imperfect and uncertain recollection of interested witnesses. But that object is attained by the law which controls the manner of making the contract, and it did not need to prescribe the manner of its performance. Nor has it done so. It has, after the contract is made, left it to be governed by the rules which govern other written contracts, only requiring that the terms of the contract should at all times be sought within the writing.
It says nothing about its abandonment, ór dissolution or rescission. These are not required to be in writing. The statute is not concerned with the contract after it has been made, and to require an abandonment of it to be in writing would be to add to the statute a *344 ■provision, which it does not now contain ; the contract which must be in writing is the contract for the sale. When that is put in writing and signed by the seller the statute is satisfied. A dissolution of the contract comes after this. It is no part of the original nor does it add a new term to it. It is something subsequently existing by the acts of, the parties by reason of which the former contract has ceased to be enforceable as a contract, and it does not in any way come within the statute.
As I have said, the cases upon this question are conflicting. In Goss v. Lord Nugent (5 Barn. & Ad. 58), the court of king’s bench held that oral evidence was not admissible to show that a portion of a contract for the sale of lands had been changed in an action on the contract.
Lord Denman,, in delivering the opinion of the court holding that the contract is within the statute and that part of. it cannot be proved by parol, says, that it would rather seem that a contract concerning the sale of lands may still be abandoned by parol so as to prevent either party, from recovering on the contract in writing. But afterwards in Stead v. Dawber (10 Ad. & El. 57), Lord Dexmaw seems to retract the last observation, and to say that the written contract cannot be waived by parol. But the point was not involved in either case. In Harvey v. Graham (6 Ad. & El. 61), and Stowell v. Robinson (3 Bing. N. C. 928), the courts followed Goss v. Lord Nugent (supra), and decided the same point which was decided .in that case. The question whether a parol abandonment was good was somewhat discussed but was not decided, the judge seeming, however, to incline to the opinion that it was not good. In Moore v. Campbell (L. R., 10 Exch. 323), the defendant had sold a large quantity of hemp to be delivered at the wharf. Upon suit by the fmyer against defendant for failure to deliver, the *345 defendant pleaded among other things that the contract to deliver on the wharf had been rescinded. The evidence to prove this plea was that after the written contract was made it was agreed by parol to deliver at the warehouse instead of at the wharf. The court held that this evidence did not prove the plea, because it showed that the parties never meant to rescind the first agreement which was what the plea imported. They intimate very strongly that a new agreement could not be substituted for the first unless the new one was executed as required by the statute or had been partly performed.
In Noble v. Ward (L. R. 1 Exch. 117; L. R. 2 Exch. 135), the action was for breach of an. agreement which was within the statute, and the defendant sought to set up a subsequent parol agreement which he claimed rescinded the first contract. The contract relied upon to constitute the rescission was merely an agreement to extend the time of performance. The court say, that it was not intended to operate as a rescission of the first contract. That being so, the subsequent contract could not operate as a change of the first within the cases cited above. It is true that the court say that the contract was void; but that was so, not because it was an attempt by parol to rescind a contract in writing under the statute of frauds, but because it was itself a contract for the sale and delivery of goods of the value of £10, and was required to be in writing. The case is not an authority that a contract under the statute cannot be rescinded by parol.
In an earlier case than these, Lord Ellenborougii held that a contract which the statute of frauds required to be in writing might be altered by a subsequent parol agreement (Cuff v. Penn, 1 Maule & Sel. 21), but this case has been overruled by the English cases above cited. It has however been followed by the supreme court of Massachusetts, which holds the *346 same doctrine (Cummings v. Arnold, 3 Met. 486 ; Stearns v. Hall, 9 Cush. 31). I can find no other English cases which bear upon the point even remotely. It will be noticed that no one of them decides the precise point here involved.
The cases in this country do not seem to follow the lead of the English courts, but they establish, I think, the law to be, that the contract for the sale of lands may be rescinded by a subsequent parol agreement (Boyce v. McCollough, 3 Watts & S. 429 ; Ryno v. Darby, 20 N. J. Eq. 231 ; Bowman v. Cunningham, 78 Ill. 48 ; Arrington v. Porter, 47 Ala. 714 ; Raffensberger v. Cullison, 28 Penn. St. 426). The same rule seems to be adopted by several text writers (Pollock on Cont. 438-39 and notes ; 2 Whar. Ev. § 906 and notes ; Stephen's Ev. note 33).
But it was objected that the parol agreement was not valid because the purchaser acquired by his contract an interest in lands which he could not surrender unless by writing (2 R. S. 134, § 6). This leads us to inquire what is the interest of a purchaser of lands under an executory contract, when he is not' in possession and has paid nothing on his contract, and how does he acquire it % It is perhaps proper enough to say, in a general way, that in such a case the vendee has an equitable interest. But this interest he does not acquire as a part of the executory contract. That of itself does not transfer anything. It is a simple ’ chose in action giving not even a right to the possession of the land. The equitable interest of the vendee is a thing which the courts of equity have engrafted upon the contract, not as a part of it, but as a thing resulting from it, and necessary for the protection of the purchaser. It arises out of the contract and is coexistent with the contract. If for any reason the contract ceases to exist, the interest of the vendee in the land ceases (Perry on Trusts, § 231). The inter *347 est passes by an assignment of the contract, and the assignee has the same right to the protection of a court of equity that the assignor had. If the purchaser abandons the contract, all his interest ceases (Wood v. Perry, 1 Barb. 114-130).
That the interest of the vendee is not a part of the contract is shown by the fact that if the vendor agrees to sell land to which he has no title, and afterwards acquires title, the trust in favor of the vendee will arise (Berry on Trusts, § 231).
Here it is plain that the contract is binding when made, but yet no interest passes in the land. That no. such interest, as is referred to by section 6, is created by the contract, is also clear from the fact that such interest can only be surrendered by a deed or conveyance, whereas the interest of the vendee in such a contract passes by simi>le assignment of the contract without reference to the interest. The conclusion must be that the interest of the vendee in the land under this contract is one created or annexed to the contract by legal implication as an incident to it, and that whenever the contract is extinguished, that interest of the vendee fails by the extinguishment of the contract by operation of law. See Bostwick v. Frankfield, 74 N. Y. 207, 214, 215.*
It is found by the referee that plaintiff delivered the contract to the deceased, and it is fairly to be inferred from the evidence that he took no further steps under it, and permitted all his rights to lapse. It is quite clear, too, that this was done after the conversation between plaintiff and deceased, and probably in consequence of that conversation. I thing this was such a performance of the contract on the part of the plaintiff as entitled him to sue for the consideration. Indeed, if it were necessary for the contract for reseis *348 sion to be in writing, I thing the acts of the plaintiff under it, as they appear, were such a part performance that it would be a fraud upon him not to permit him to- recover the consideration, and if that is so, he may maintain his action, although the contract if entirely executory would be void by the statute of frauds (Pollock on Oont. 580).
The case of Cocking v. Ward (1 C. B. 858), relied on by the learned referee as an authority fatal to the plaintiff’s claim, was based upon the wording of the English statute of frauds, that no action shall be maintained upon a contract which the statute requires ' to be in writing; and the case itself, as is plain from the report, turned upon a point of pleading. The same may be said of the other cases cited by the referee from the English reports. But those cases have not been followed in England since the new rules of pleading came in force (Poelbrook v. Lawes, 12 Q. B. Div. 284), and I do not think they were ever authority in this State or even in other States where the statute of frauds reads like the English statute. (Thomas v. Dickinson, 12 N. Y. 364; Van Valkenburg v. Croffut, 15 Hun, 147-49 ; Wetherbee v. Potter, 99 Mass. 354-61).
The case of Seins v. Killian (12 Ind. 252) is at variance with the case of Poelbrook v. Lawes and with the other cases just cited, and I do not think that the principle to be deduced from it was ever the law of this State. The case of Liddle v. Needham (33 Am. R. 359), is clearly distinguishable from this one in any aspect of the case. In that case the contract was ex-ecutory on both sides, and nothing was done between the parties to take the case out of the statute. As is said by the court, the consideration of Liddle’s promise was only the void promise of Needham. But in this case the consideration for the promise of the deceased was the actual giving up of the benefits of *349 the contract for the purchase of the land. Upon the whole, I do not think the judgment of the referee can stand upon the ground on which it was put by him.
But it is claimed that the contract of the deceased was an agreement to answer for the debt of another, and for that reason it was void under another section of the statute because not in writing, and it is sought to sustain the decision of the referee on that ground. I do not think the evidence will sustain the claim (Brown v. Weber, 38 N. Y. 187). Upon the evidence, the defense of the statute of limitations cannot be sustained.
As to the proposition that the note given by plaintiff to deceased on the first of January, 1880, was prima facie evidence of a complete settlement between them ; that the law is as defendant claims it to be is quite clear (Lake v. Tysen, 6 N. Y. 461), and if the referee had found the fact his finding must have stood. But the point was not raised on the trial, and the referee was not requested to find upon it, and the case does not show that it contains all the testimony given on the trial, and therefore I do not think the plaintiff ought to be concluded upon that question until a referee has decided it, particularly as his attention could not be called to it in such a case as this where there are no pleadings.
The defendant insists that the claim is an unconscionable one and should not be sustained. But that is also a question for the referee. I think that there must be a new trial before another referee.
II. December, 1883.
Upon the new trial before Henry J. Sullivan, Esq., Referee, it appeared, in addition to the facts found on the first trial, that a short time after the contract of sale was made, the plaintiff had a conversation with the *350 testator at his house, with reference to selling the land and that testator requested him to purchase it of his son, Harvey Walker, and hold it a little while until Harvey abandoned the notion of selling, and then to let Harvey have it back whenever he wanted it; that plaintiff then agreed to go to Harvey, make a bargain for the purchase of the land, and thereby make him believe that he, plaintiff, had bought it; that the testator believed that.if Harvey obtained the money for the land, he would squander it, and preferred that Harvey should keep the land; that plaintiff thereupon went to Harvey’s residence, where the contract of sale was executed and delivered to plaintiff.
It also appeared that on January 1, 1880, the plaintiff executed and delivered to the testator his promissory note of that date for $1,300, payable three years after date, with interest. On January 11, 1881, as appears by an indorsement on the note, plaintiff paid $78 to apply thereon. This was shortly before the testator’s death, which occurred February 27,1881,
Charles M. Mien, for plaintiff.
. Charles M. Williams, for defendant.
Sullivan, Ref.—[After reference to the facts .and the points decided by Judge Rumset.]
In my opin-: ion if an agreement were made by the testator, as described by the witness Hill, for the surrender of the land contract by the plaintiff, it was, and is, void; there being no consideration for such promise, as it appears that the contract was to have been surrendered by plaintiff whenever requested so to do; and that the contract was entered into on the part of the plaintiff with Harvey Walker, at the testator’s request, and to prevent Harvey from selling to strangers and squandering the proceeds of the sale, and to hold such contract until Harvey abandoned the notion of selling, which; *351 as the evidence shows, he did, as the testator supposed he would, a short time after the contract was entered into ; and that such surrender was merely in accordance with such original agreement, and therefore, if any promise were made by the testator, it was void for want of consideration.
There is also another insurmountable obstacle to the plaintiff succeeding in this proceeding, as the note is presumptive evidence that a settlement was made, at the date of it, of all demands between the parties, and a finding by them at that date of a balance due the testator from the plaintiff, upon such settlement, of an amount represented by the note (Lake v. Tysen, 6 N. Y. 461; Dutcher v. Porter, 63 Barb. 15,19 ; Sherman v. McIntyre,7 Hun. 592, 593 ; Defreest v. Bloomingdale, 5 Den. 304; Gould v. Chase, 16 Johns. 227 ; Decker v. Livingstone, 15 Id. 479 ; Cowen & H. Notes Phil. Ev. pt. 1, p. 315; Sprague v. Hosmer, 82 N. Y. 466, 470; Alvord v. Baker, 9 Wend. 323 ; Black v. White, 10 Super. Ct. (J. & S.) 446 ; Sayles v. Olmstead, 66 Barb. 590 ; Smith v. Tucker, 2 E. D. Smith, 193 ; Duguid v. Ogilvie, 3 Id. 527. Also see opinions of the general term of this department in Richmond v. Richmond, vol. 362, court of appeals printed cases, page 57).
In Sherman v. McIntyre, supra, as appears by the printed case on appeal (see printed cases of general term, vol. 2, January term, 1878, p. 396), the evidence clearly showed, and the referee who heard the case so found, that the note,—made by the defendant to plaintiff’s testator, sued upon, and which it was claimed created the presumption of a settlement of all demands between the parties to it, at the date thereof, and sustained a finding then of a balance due the payee to the maker, of the amount represented by the note, and therefore disposed of counterclaims arising, before the note was given, in favor of the defendant against the testator, which were interposed in the action,—was given by the *352 defendant under the following state of facts, viz:— One Birdsall applied to the testator for a loan of money the testator required security, and the defendant, who was then present, at said Birdsall’s request, signed the note in question ; and the testator then gave the money to the defendant, who immediately, then and there, gave it to Birdsall. Birdsall and wife afterwards gave the defendant their note for the amount on account of the transaction. It appeared clearly from the evidence and was so found-by the referee, that the defendant had no settlement at the date of the note, and that the . note was not given upon any settlement between the parties to it.
I am also of the opinion, that the motion, on the part of the plaintiff, for leave to open the case and introduce evidence, as to the consideration of the note in evidence herein, should be denied ; for the reason that he does not show in his motion papers, that he can establish facts which will insure his recovery herein.
If he were to prove that the note was given for the loan of money, it would raise a presumption, equally conclusive with that now raised by the note itself, that he had no claim at that time against the testator (Richmond v. Richmond, 3 Alb. L. J. 352). The court of appeals, in their opinion in that case, say that “an application for a loan of money is inconsistent with the idea that the person applied to is at the time indebted in a much larger sum to the applicant, and raises a presumption that such debt does not exist, and the fact that the loan was not made does not destroy the presumption.”
In my opinion, for the reasons above stated, judgment must therefore be given in favor of the defendant, dismissing the plaintiff’s complaint or claim.

 See also Hart v. Britton, 17 Weekly Big. 552.