I. C. McConnell, Appellant, v. C. L. Poor.

Sureties on Contractor's Bond: JUDGMENT AGAINST CONTRACTOR: *When not res adjudicata.* A judgment against a contractor for damages for breach of contract is not *res adjudicata* against the surety on his bond, where the bond did not stipulate that the surety should be bound by such a judgment, and he was not a party or privy to the action, though he had notice thereof.

CHANGES IN WORK CONTRACTED FOR: *When defense to sureties.* Where a building contract provided that the value of changes or alterations, without additions or deductions, should be estimated according to the rate at which the work had been taken, and the amount added to our deducted from the contract price, a change made wihout compensation, corresponding relatively to the contract price, which occasioned an additional expense exceeding the balance claimed, is a defense in an action on the contractor's bond.

**Review on Appeal:** CONFLICT IN EVIDENCE. Where the evidence
3 was conflicting, and sufficient to support a judgment in favor
of defendant, it will not be disturbed on appeal.

*Appeal from Des Moines District Court.*—HON. JAMES D.
SMYTH, Judge.

THURSDAY, JANUARY 24, 1901.

EVANS entered into a contract with plaintiff, July 14,
1891, to construct a dwelling house for him, and on the
same day executed a bond, with defendant as surety, con-
ditioned "that, if the said Evan F. Evans shall duly per-
form said contract, then this obligation is to be void, but, if
otherwise, the same to be and remain in full force and vir-
tue." The house was built, and in 1892 Evans began an
action against the plaintiff for a balance due. McConnell
filed a cross petition, in which he averred several breaches
of the contract, and prayed for damages. The result was
a judgment against Evans for $943, to recover which this
action was brought against the defendant as surety on the
bond. By the way of defense, he pleaded alterations in
the contract in four particulars: (1) That the work was
done under the direction of McConnell, instead of Sunder-
land, the architect, as agreed; (2) the broken ashlar work
was constructed with close joints, instead of being tuck
pointed, as stipulated; (3) the increased cost occasioned by
this change was not estimated at the rate at which the work
was taken, and added to the amount to be paid, as exacted
by the terms of the contract; and (4) other changes were
made without estimating the increased cost, as required in
the agreement. To these defenses the plaintiff pleaded ad-
judication in Evans against McConnell as an estoppel. The
defendant also answered that he had advanced, in payment
of labor and material, with McConnell's knowledge and con-
sent, a large amount of money, and was released from lia-
bility on the bond to that extent. Trial to jury, and from

judgment on a verdict against him the plaintiff appeals.— *Affirmed*.

*Kelley & Cooper* and *Blake & Blake* for appellant.

*Seerley & Clark* and *A. M. Antrobus* for appellee.

LADD, J.—How far will a surety on a bond be bound by a judgment against his principal alone? There is no little confusion in the language of the courts on this subject, and entire harmony does not prevail in the decisions. This has resulted sometimes in treating such a judgment as res adjudicata in an action against the surety, rather than passing on the character of the contract, and simply holding him to its performance. It is a fundamental principle in jurisprudence that every man shall have his day in court, and shall be heard in his own defense, and of this right he may not under the laws and constitution of this state be deprived. For this reason, judgment against the principal may never foreclose investigation of the surety's liability, unless, by virtue of the latter's undertaking, he has obligated himself directly or by implication to be bound thereby. Where, by the terms of the bond, the surety is to be bound by the litigation to which he is not a party, the courts decide, not that the judgment is an adjudication, because of the connection, but that he must perform the contract as it is written. *Bank v. Read,* 86 Iowa, 136. The only ground on which sureties on official bonds generally may be regarded as bound by the judgments against their principals is that the sureties by the terms of their bond agree, expressly or impliedly, to abide the result of litigation against their principals. This principle is well stated in *Stephens v. Shafer,* 48 Wis. 54 (3 N. W. Rep., 835): "The nature of the contract in official bonds is that of a bond of indemnity to those who may suffer damages by reason of the neglect, fraud, or misconduct of the officer. The bond is made with full knowledge and understanding that in many cases such damages

must be ascertained and liquidated by an action against the officer, for whose acts the sureties make themselves liable, and the fair construction of the contract of the sureties is that they will pay all damages so ascertained and liquidated in an action against their principal." See also, *Masser v. Strickland*, 17 Am. Dec. 668. This court held in *Charles v. Hoskins*, 14 Iowa, 471, that judgment against a sheriff might be received in evidence as fixing, prima facia, the liability of the surety. True, other reasons for so holding than here suggested were assigned. But the doctrine of stare decisis has no application to the reasons given for reaching the conclusion; it is limited to the very point decided. The fallacy in the reasoning of that case, as well as *City of Lowell v. Parker*, 10 Metc. (Mass.) 309 (43 Am. Dec. 436), on which it was based, lies in supposing that, because the surety may claim the benefit of a judgment in favor of his principal, it follows that he is concluded by one against him. But the surety is discharged by a finding for his principal, not owing to the creditor being estoppel, but for that it establishes the absence of liability of the principal; and, if he is not liable, the surety cannot be, as his obligation is merely incidental to that of the principal. Besides, the discharge of the principal does not always release the surety. If the former be an infant when executing an instrument, and is discharged on that ground, the surety may yet be held. *Bank v. Hall*, 106 Iowa, 540. To the point is this language, found in *Jackson v. Griswold*, 4 Hill, 528: "No doubt * * * a decision against the debt would discharge him [the surety]. That view is not on the ground that he is a party, but because the judgment or decree extinguished the debt; and, the principal thing being destroyed, the incident—the obligation of the surety—is destroyed with it. The effect is the same as a release by the creditor or a payment by the debtor."

It is sometimes urged that, as the surety has become responsible for the debt or good conduct of the principal,

judgment establishes the fact on which the surety's liability
rests.   A complete answer to this is that the fact has not
been established against the surety, because he has been
afforded no opportunity to litigate the question. ' Under the
civil law, the surety was permitted to defend, and even al-
lowed to prosecute an appeal from the judgment against the
principal, though not a party to the judgment.   As he was.
given his day in court, there appears no serious objection
to binding him by the litigation.   Much of the confusion in
the decisions seems to have resulted from the attempt to
apply the rule of the civil law, binding the surety by the·
litigation against the principal, without allowing the former·
the participation there accorded.   We have called attention
to the inapplicability of the doctrine of estoppel in such·
cases as the appellant, with much propriety, has insisted
that, if applicable at all, logically it must extend to bonds
in private transactions.   The better opinion and the voice
of authority is the other way, and a judgment against the·
principal is entitled to no consideration as against the
surety, unless by the terms of the contract the surety is to·
be bound thereby.   *Giltinan v. Strong,* 64 Pa. St. 244;
*Fletcher v. Jackson,* 23 Vt. 581; *Arrington v. Potter,* 47'
Ala. 714; *Douglas v. Howland,* 24 Wend. 34; *De Grief v..
Wilson,* 30 N. J. Eq. 437; *Insurance Co. v. McMillan,* 29
Ala. 146; *Johnson v. Griswold,* 4 Hill, 528; 2 Van Fleet,.
Former Adjudication, section 567; 2 Black, Judments, sec-·
tion 592.   In *Fletcher v. Jackson, supra,* the court, speak-·
ing through Redfield, J, said:   "The general rule undoubt-
edly is that, in a collateral undertaking by way of guar-·
anty, where a suit is necessary to fix the liability of the·
guarantor, the first judgment is prima facie evidence of the·
default.   But, where the guarantor is liable without suit
against the principal, the judgment against him is regarded
as strictly *inter alios.*   The judgment of eviction, in order·
to show a breach of the covenants of warranty, is a case of'
the first class.   The judgment of eviction is a necessary

step in making out the liability of the warrantor; that is, the *casus foederis*. So, too, generally, I apprehended, when any one undertakes to indemnify against the consequences of a suit, or that a suit if brought shall be effectual, the judgment in either case, being the *casus foederis*, is *prima facie* evidence of the liability. And, on the other hand, where the suit may, in the first instance, be brought directly against the guarantor, the judgment against the principal, without notice to the guarantor, is not evidence; and so, too, if the guarantor have notice of suit against the principal, he is not obliged to concern himself in its defense, but may await a suit against himself, and then insist upon the right to contest the whole ground."

The defendant in the case at bar was not a party to the contract, nor could he have insisted on being made a party to the action between Evans and McConnell thereon. The latter might have brought suit against both principal and surety on the bond, but he chose, as was his right, to base his action on the contract alone. Even if these might have been regarded, for some purposes, as one instrument, the appellant elected to treat them as distinct and separate by basing his suit against Evans solely on the contract, and that against Poor on the bond. The surety may require the principal to defend, for this is his duty; but the surety owes no such duty to the principal, and is under no obligation to defend him. Poor was not a party to the action on the contract, for he could neither appear and control the suit nor appeal from the decree. Nor was he privy to that action. Privity, says Greenleaf, denotes mutual or successive relationship to the same right of property. Privity in law involves the right of representation, and certainly the principal, in an action against himself alone, may not represent the surety. As was said in *Gillinan v. Strong, supra*: "The privity of the surety with his principal is in the contract alone, and not in the action." For the acts or omissions of the principal to which the surety pledges himself

in his contract he is bound, and it is only in this respect the principal represents the surety. This is the criterion of the competency of the principal's declarations and admissions. Where these form a part of the acts or omissions of the principal for which the surety is bound, they constitute portions of the *res gestae,* and may be evidence against the surety. But beyond this line clearly the surety cannot be affected by the acts or admissions of his principal, for he is not represented by him. True, Poor was the attorney for Evans in the suit on the contract, contested it with zeal and persistency, and was charged with notice thereof. See *Evans v. McConnell,* 99 Iowa, 332. But as surety he could make no defense to the action on the contract. His client might have revoked his authority at any moment. He could have gone further, and dismissed the action, or, rather, withdrawn his defense to the cross petition, without consulting the surety. See *Jackson v. Griswold, supra.* For the reasons stated, we are of the opinion the district court did not err in holding the defendant not bound by the findings against his principal in the former action.

II. The appellant insists the contract permitted changes, and this is true. But the manner of making them is specifically pointed out. "The value of such changes or alterations, without additions or deductions, will be estimated according to the rate at which the work has been taken, and the amount added to or deducted from the amount hereinafter specified." This precluded the parties from entering into arrangements for additional work, or that of a different character, without compensation corresponding relatively to the contract price. If this were not so, an entirely different building from that stipulated might have been erected at the surety's cost. Thus, the alleged change in the broken ashlar work alone occasioned an additional expense of $1,600 or more.—more than the balance claimed. While the plaintiff had the option of

making alterations, he might not do so without paying therefor at the rate fixed by the contract.

III. The evidence was in conflict on every issue submitted to the jury, and sufficient to support the verdict. The instructions in the respects criticised were clear and accurate, and included those requested, in so far as correctly stating the law.—AFFIRMED.