STATE of Iowa and Iowa State Board
of Regents, Appellees,

v.

BI-STATES CONSTRUCTION COMPA-
NY, INC. and Merchants Mutual
Bonding Company, Appellants.

No. 60867.

Supreme Court of Iowa.

Aug. 30, 1978.

Rehearing Denied Oct. 12, 1978.

Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants.

Richard C. Turner, Atty. Gen., Elizabeth A. Nolan, Asst. Atty. Gen., and Arthur O. Leff, Iowa City, Sp. Counsel, for appellees.

LeGRAND, Justice.

In this case the State of Iowa and Iowa State Board of Regents (hereafter jointly called Regents) sued Bi-States Construction Company, Inc. (hereafter called Bi-States) for breach of contract arising out of a sewer construction job at Oakdale Sanitarium. Merchants Mutual Bonding Company (hereafter called MMB), an Iowa corporation, was made a defendant as surety on Bi-States' construction bond. Trial resulted in judgment for the Regents in the amount of $16,483.26. Bi-States and MMB appeal, and we reverse.

The contract was entered into on July 7, 1967. It called for construction of approximately 4,950 lineal feet of sewer line. Difficulties arose in the performance of the contract. Bi-States blamed its problems on the Regents for not having the site properly staked and for failing to secure a right of way from Crandic Railroad. The Regents contend they did everything required of them and assert the job failure was attrib-utable solely to Bi-States. Regardless of the cause, eventually Bi-States abandoned the contract, and the Regents secured another contractor to complete it.

This is not the first litigation growing out of this contract. Earlier two suits, later consolidated for trial, had been brought by various subcontractors against Bi-States, MMB, the State of Iowa, and the Regents. The Regents cross-claimed, alleging damages from Bi-States for breach of contract. Those consolidated cases, including the cross-claim, were dismissed on January 3, 1974, for failure to comply with rule 215.1, Rules of Civil Procedure. No appeal was taken from that dismissal.

While those consolidated cases were pending, Bi-States, a Nebraska corporation, was dissolved under the law of that state on March 26, 1969. Its certificate of authority to do business in Iowa had previously been revoked on November 20, 1968, pursuant to § 496A.118, The Code, 1966.

On July 1, 1974, the Regents filed the present action against Bi-States and MMB. Both defendants filed special appearances, based on the Regents' delay in bringing suit beyond the two-year deadline fixed by § 496A.102, The Code, for suing dissolved corporations. This special appearance was overruled. Motions for adjudication of law points and for summary judgment on the same grounds were also denied. The case was then tried to the court, resulting in a judgment for the Regents as already mentioned.

Bi-States and MMB set up five grounds upon which they rely for a reversal. We find it necessary to consider only one—the right to sue dissolved corporations—which is dispositive of this appeal. We hold the Regents' claim was barred by § 496A.102.

We reach this conclusion because the Regents did not start their suit within two years from the date Bi-States was dissolved. Whether this matter should be decided under the law of Nebraska or that of Iowa is a possible conflict of laws issue

* MASON, J., serving after June 14, 1978, by special assignment.

which was not raised and which, under present facts, would make no difference because the statutes of the two states are virtually identical. We consider the case under our own statute.

We set out the relevant portion of § 496A.102:

"The dissolution of a corporation or the expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or expiration, if action or other proceeding thereon is commenced within two years after the date of such dissolution or expiration."

The present suit was started on July 1, 1974, more than five years after the dissolution. The present action is clearly barred unless plaintiffs can somehow escape the impact of § 496A.102. It appears this precise question has never been before this Court, but see Bishop v. Schield Bantam Co., 293 F.Supp. 94, 96 (N.D.Iowa 1968).

In their brief the Regents come close to admitting the suit is barred as to Bi-States but not as to MMB. However, they do not quite make such an outright concession, and we consider the liability of each defendant separately.

■ I. *Claim against Bi-States.* The Regents do not rely here on one issue they raised in the trial court—whether the present suit is permissible under § 614.10 as a continuation of the dismissed original action. That matter is neither argued nor is authority cited for it. We therefore consider it waived. In any event, the Regents would be hard put to establish any right under that statute in view of *Wilson v. Wright,* 189 N.W.2d 531, 532 (Iowa 1971) and *Central Construction Co. v. Klingensmith,* 256 Iowa 364, 367, 127 N.W.2d 654, 656 (1964).

■ In both of the cases just cited, we held one who seeks to rely on § 614.10 to justify bringing an action which would otherwise be barred must both plead and prove

the dismissal of the first action was not based on negligence. The Regents made no attempt to meet this burden in the pending case.

■ As we find no other basis upon which this action could be maintained against Bi-States, we believe the trial court erred in ruling otherwise. Perhaps we should make brief reference here to the provision in § 496A.102 which permits a dissolved corporation to act for the purpose of "winding up its affairs." Although this court has never construed this language, we agree with what was said in *Bishop. v. Schield Bantam Co.,* 293 F.Supp. at 96 in holding that this was not intended to prolong beyond the specific two-year period the time within which suits can be brought against dissolved corporations. See generally 48 Iowa L.Rev. 1006, 1017 (1963).

We hold the Regents' action is barred as to Bi-States by the provisions of § 496A.102.

II. *Claim against MMB.* This brings us to the more difficult question concerning MMB's liability. MMB remains an active corporation, not subject to the limitations of § 496A.102. Its freedom from liability must be vicariously based on its principal's right to rely on that statute. Despite Regents' vigorous argument to the contrary, we conclude MMB cannot be liable unless Bi-States is. As we have already held there can be no recovery against Bi-States, it follows we also hold in favor of MMB.

■ Although there is divided authority on the subject, Iowa adheres to the rule a surety may assert as a defense the statute of limitations available to the principal. *First National Bank of Shenandoah v. Drake,* 185 Iowa 879, 884, 171 N.W. 115, 117 (1919); *Auchampaugh v. Schmidt,* 70 Iowa 642, 643, 644, 27 N.W. 805, 806 (1886). This principle was also recognized in *In re Estate of Fuller,* 228 Iowa 566, 570–71, 293 N.W. 55, 57 (1940), but held to be inapplicable under the facts.

Rather than arguing against this general rule, the Regents instead insist it does not apply to construction contract bonds. They cite no authority for this, and we have

found none. Indeed, although not directly in point, we have applied the general principal-surety rule in several construction performance bond cases. *Iowa Bonding & Casualty Co. v. Wagner Co.*, 203 Iowa 179, 185, 210 N.W. 775, 778 (1926); *McConnell v. Poor*, 113 Iowa 133, 136, 84 N.W. 968, 969 (1901). *See also Barnes v. Hampton*, 198 Neb. 151, 252 N.W.2d 138, 139 (1977).

■ We can find no reason for the distinction plaintiffs urge us to adopt, and we accordingly reject their suggestion. We hold MMB is entitled to assert as a defense that the Regents' claim against the principal is barred by § 496A.102. *See* 74 Am. Jur.2d *Suretyship* §§ 1, 24, 25, 104 (1974); 72 C.J.S. *Principal and Surety* § 92 (1951).

■ The Regents also argue that MMB is liable independently of the obligation on the bond because of a stipulation entered into while the original action (later dismissed under rule 215.1) was pending. The Regents say this either revived the original claim or created a new liability. In either event the statute of limitations would be ten years under § 614.1(6).

We do not read the stipulation as the Regents do. It created no new liability, nor did it enlarge MMB's obligation. On the contrary it specifically limited MMB's duty to the "terms of the bond."

Those terms include the following:

"The Principal and Sureties on this bond hereby agree to pay to all persons, firms, or corporations having contracts directly with the Principal or with subcontractors all just claims due them for labor performed or material furnished in the performance of the contract * * * but the Principal and Surety shall not be liable to said persons, firms, or corporations unless the claims of said claimants against said portion of the contract price shall have been established as provided by law."

The stipulation upon which the Regents rely provides in part:

"Merchants Mutual Bonding Company agrees that it duly executed the bond guaranteeing the performance of the contract of Bi-States Construction, Inc. * * * and that it is liable on said bond *according to the terms thereof.*" [Emphasis added].

Under the stipulation MMB agreed to reimburse the Regents for claims arising out of Bi-States' default as those claims

"shall all be subsequently determined and to the extent the sum of said items exceeds said original contract price, Merchants Mutual Bonding Co. shall reimburse the State University of Iowa, *to the amount and extent said items are covered by the terms and conditions of its bond* * * *." [Emphasis added].

The stipulation was entered into during the original suit brought by the sub-contractors and later stricken. It seems clear the purpose was to relieve the parties from the necessity of proving the contract, the bond, and the default. At that time the defense under § 496A.102 was not yet in existence. The circumstances surrounding the stipulation, as well as its specific terms, negate any possibility it was intended to create a new and greater obligation than that which MMB undertook by its bond.

■ The Regents remaining argument is also without merit. They say there is a direct obligation running to them from MMB which entitles them to recover regardless of Bi-States' liability. We do not agree that recovery may be had from MMB on this theory.

We considered a similar argument in *Benson v. Alleman*, 220 Iowa 731, 733–35, 263 N.W. 305, 306–07 (1935), where we said:

"It is, of course, true that the obligation of a surety is sometimes spoken of as a primary obligation. For example, in 50 C.J. 73, it is said that 'the surety's obligation is primary, original and direct.' To the extent that the surety becomes obligated to pay the same debt as the principal and by the same contract, this statement is, of course, true. The same authority, however, treats the subject of suretyship under the heading of Principal and Surety. That there can be no surety without a principal is obvious, and a prin-

cipal is defined by that authority as 'the person on whom the primary obligation rests.' 50 C.J. 13. A contract of suretyship is usually, in general terms, defined as a contract to answer for the debt, default, or miscarriage of another. 50 C.J. 12; 21 R.C.L. 946–954. The obligation of the surety is to pay the debt if the principal does not. \* \* \* The primary obligation is that of the principal. The obligation of the surety is secondary.

"The obligations of the surety are held to be coextensive with those of the principal. It is the general rule that any defense which the principal can make is available to the surety. *Iowa Bonding & Casualty Co. v. Wagner*, 203 Iowa 179, 210 N.W. 775. The situation in the case at bar is not unlike that where two persons sign a promissory note as makers, but one as surety for the other, and the statute of limitations has run against the principal, but because of the surety's absence from the state it has not run against the surety. This court has held that a suit by the original payee of the note against the surety cannot be maintained in such a case, that since the statute of limitations bars a suit against the principal, no suit can be maintained against the surety."

III. Under the record before us, we hold both Bi-States and MMB were entitled to summary judgment on their motions under rule 237, R.C.P. There was no genuine issue as to any material fact. The only controversy concerned the legal consequences arising out of uncontroverted facts as shown by the pleadings, including the exhibits, the motions, and affidavits. *See Goodwin v. City of Bloomfield*, 203 N.W.2d 582, 588 (Iowa 1973).

The judgment is reversed, and the case is remanded for entry of judgments for Bi-States and MMB as directed herein.

REVERSED AND REMANDED.

All Justices concur, except ALLBEE and McGIVERIN, JJ., who take no part.